## TAYLOR v. STOCKWELL.

EXECUTION.—*Sale of Lands on.*—*Inchoate Interest of Debtor's Wife, Prior to Act of March 11th, 1875.*—Prior to the taking effect of the act of March 11th, 1875, 1 R. S. 1876, p. 554, when the lands of a debtor were sold on

Taylor *v.* Stockwell.

an execution issued on a simple personal judgment, the purchaser, on receiving his deed from the sheriff, took the fee-simple title in the whole, subject only, so far as the wife of the debtor was concerned, to her inchoate interest in one-third thereof, which interest would become consummate in case she should survive her husband.

Same.—*Interest of Wife Under Act of 1875.—Partition.*—By the act of 1875, the one-third in which the wife of the debtor has an inchoate interest can not be sold on an execution issued on a judgment rendered subsequent to the taking effect of that act ; and, upon a sale of the other two-thirds on such execution and the vesting of the title thereof in the purchaser, her hitherto inchoate interest becomes consummate, and she is entitled to immediate possession thereof and to have the same set off to her by partition.

Same.—*Remedy.—Contracts Prior to that Act.*—Such act affects only the remedy of the creditor, and that to a reasonable extent, and applies to judgments rendered on contracts made previous to, as well as to those made since, the taking effect of such statute.

Same.— *Constitutional Law.—Impairing Obligation of Contracts.*—Such statute is not in conflict with the provisions of the State and Federal constitutions, prohibiting the enactment of any statute impairing the obligation of contracts.

BIDDLE, J., dissented and filed a dissenting opinion.

From the Bartholomew Circuit Court.

*S. Stansifer,* for appellant.

*R. Hill,* for appellee.

WORDEN, J.—Action to recover land. The following were the material facts in the cause :

In February, 1874, Alfred E. Taylor, who was and is the husband of the appellant, owned the land in dispute, which was worth less than twenty thousand dollars. At that date he, with others, executed a promissory note to the Howe Machine Company, for $380.00. Afterward, in September, 1875, the payee of the note recovered a judgment thereon against the makers, in the Bartholomew Circuit Court. An execution was duly issued upon the judgment, by virtue of which the land in controversy was levied upon and sold by the sheriff, as the property of said Alfred E. Taylor, and the appellee, Stockwell, holds the sheriff's deed for the property, made in

pursuance of the sale. The appellant claimed, under the act of March 11th, 1875, 1 R. S. 1876, p. 554, one-third of the land, and demanded that it be set off to her. The court below, however, decided against her, and she appeals to this court.

It will be sufficient, for the purpose of presenting the question involved, to set out the 1st and 2d sections of the act referred to. They are as follows:

" Sec. 1. *Be it enacted by the General Assembly of the State of Indiana,* That in all cases of judicial sales of real property, in which any married woman has an inchoate interest by virtue of her marriage, where the inchoate interest is not directed by the judgment to be sold or barred by virtue of such sale, such interest shall become absolute and vest in the wife in the same manner and to the same extent as such inchoate interest of married woman now become absolute upon the death of the husband, whenever, by virtue of said sale, the legal title of the husband in and to such real property shall become absolute and vested in the purchaser thereof, his heirs or assigns, subject to the provisions of this act and not otherwise. That when such inchoate right shall become vested, under the provisions of this act, such wife shall have the right to the immediate possession thereof, and may have partition, upon agreement with the purchaser, his heirs or assigns, or upon demand, without the payment of rent, have the same set off to her.

" Sec. 2. The provisions of this act shall not apply to sales of real estate upon judgments rendered prior to the taking effect of this act, nor to any sale of real property of the value of twenty thousand dollars and over, nor to the sale of such real property of the aggregate value of twenty thousand dollars and over, except so much of such real property as shall not exceed in value the sum of twenty thousand dollars."

It will be seen that the note upon which the judgment was rendered was executed before the taking effect of the statute, though the judgment was rendered afterward.

The statute, doubtless, in terms, applies to such case, and entitles the appellant to one-third of the land, and to immediate partition thereof, if it be valid as applied to judgments rendered upon contracts entered into by the husband before the taking effect thereof.

The appellee claims, and the court below decided, that the statute, as applied to sales on judgments rendered upon contracts with the husband, entered into before the taking effect of the act, is void, as being in conflict with the provisions in the Federal and State constitutions forbidding the passage of any law impairing the obligation of contracts. Const. U. S., Art. 1, sec. 24 ; Const. Ind., Bill of Rights, sec. 24.

The appellant contends, on the other hand, that the statute is constitutional and valid, as applied to such case.

We have been furnished with able and exhaustive briefs upon the point, by the counsel of the respective parties, which have greatly facilitated our labors in the examination of the question.

In order to a clear understanding of the question, it may be well to consider to what extent the creditor could have subjected the husband's land to the payment of the debt, by the law existing at the time the contract was executed. This will aid us to comprehend more clearly the extent and character of the change made by the act of 1875, and to determine the validity of the change as applied to contracts previously executed.

By the law as it stood at the date of the contract, the creditor was entitled to have sold on execution the entire fee in the husband's land, for the payment of the debt. The purchaser, unless the land was redeemed as provided for, took the fee in the entire land, subject to the

contingency that the wife should survive the husband; in which event he became divested of the title to one-third thereof, in favor of the surviving wife. In the event that the husband survived the wife, the purchaser retained the fee to the entire land; and in either event he held the entire land during the joint lives of the husband and wife.

By the act of 1875, the interest which the creditor could have sold on execution, and which the purchaser could acquire under the sale, was cut down to two-thirds of the land. The other third, to which the wife had only an inchoate right, during coverture, to become consummate only on the contingency that she should survive her husband, is given immediately to the wife. By the law of the date of the contract, the whole of the land could be sold, subject only to the wife's interest in one-third thereof, contingent upon her survivorship. By the law of 1875, only two-thirds of the land can be sold. In other words, the latter act exempts from sale on execution the third of the land to which the wife has an inchoate right during the marriage, to become consummate on the death of the husband leaving her surviving, and vests her immediately with the consummate right thereto, upon such sale of the other two-thirds.

It is sometimes difficult to determine satisfactorily, whether an enactment merely affects the remedy, without impairing the obligation of the contract; or whether, by affecting the remedy, it impairs that obligation.

The latest exposition of the subject, to which our attention has been called, is that contained in the case of *Edwards* v. *Kearzey*, 96 U. S. 595. In that case, a debt was contracted in North Carolina, at a time when only personal property to the value of fifty dollars, and real estate to the value of five hundred dollars, were exempt from execution. Afterward, by the constitution of that State of 1868, personal property to the amount

Taylor *v.* Stockwell.

of five hundred dollars, and a homestead not exceeding in value one thousand dollars, were exempted from execution. It was held that the increased exemption was invalid in respect to the prior contract, on the ground that it impaired the obligation thereof. The opinion of the court was pronounced by Mr. Justice SWAYNE, who, having considered the case at length, announced, as the conclusion of the court, the following proposition :

" The remedy subsisting in a State when and where a contract is made and is to be performed is a part of its obligation, and any subsequent law of the State which so affects that remedy as substantially to impair and lessen the value of the contract, is forbidden by the constitution, and is, therefore, void."

It may be noted, that Mr. Justice HARLAN dissented, but the grounds of his dissent are not stated.

Mr. Justice CLIFFORD delivered the following opinion, which we regard as valuable, and which we can not condense without impairing its force. He said :

" I concur in the judgment in this case, upon the ground that the State law, passed subsequent to the time when the debt in question was contracted, so changed the nature and extent of the remedy for enforcing the payment of the same as it existed at the time as materially to impair the rights and interests which the complaining party acquired by virtue of the contract merged in the judgment.

" Where an appropriate remedy exists for the enforcement of the contract at the time it was made, the State Legislature can not deprive the party of such a remedy, nor can the Legislature append to the right such restrictions or conditions as to render its exercise ineffectual or unavailing. State Legislatures may change existing remedies, and substitute others in their place ; and, if the new remedy is not unreasonable, and will enable the party to enforce his rights without new and burdensome restrictions,

the party is bound to pursue the new remedy, the rule being, that a State Legislature may regulate at pleasure the modes of proceeding in relation to past contracts as well as those made subsequent to the new regulation.

" Examples where the principle is universally accepted may be given to confirm the proposition. Statutes for the abolition of imprisonment for debt are of that character, and so are statutes requiring instruments to be recorded, and statutes of limitation. ·

" All admit that imprisonment for debt may be abolished in respect to past contracts as well as future; and it is equally well settled that the time within which a claim or entry shall be barred may be shortened, without just complaint from any quarter. Statutes of the kind have often been passed; and it has never been held that such an alteration in such a statute impaired the obligation of a prior contract, unless the period allowed in the new law was so short and unreasonable as to amount to a substantial denial of the remedy to enforce the right. Angell Lim. (6th ed.), sec. 22. *Jackson* v. *Lamphire,* 3 Pet. 280.

" Beyond all doubt, a State Legislature may regulate all such proceedings in its courts at pleasure, subject only to the condition that the new regulation shall not in any material respect impair the just rights of any party to a pre-existing contract. Authorities to that effect are numerous and decisive; and it is equally clear that a State Legislature may, if it thinks proper, direct that the necessary implements of agriculture, or the tools of the mechanic, or certain articles of universal necessity in household furniture, shall, like wearing-apparel, not be liable to attachment and execution for simple contract debts. Regulations of the description mentioned have always been considered in every civilized community as properly belonging to the remedy to be exercised or not by every sovereignty, according to its own views of policy and humanity.

" Creditors as well as debtors know that the power to adopt such regulations resides in every State, to enable it to secure its citizens from unjust, merciless, and oppressive litigation, and protect those without other means in their pursuits of labor, which are necessary to the well-being and the very existence of every community.

"Examples of the kind were well known and universally approved both before and since the Constitution was adopted, and they are now to be found in the statutes of every State and Territory within the boundaries of the United States; and it would be monstrous to hold that every time some small addition was made to such exemptions that the statute making it impairs the obligation of every existing contract within the jurisdiction of the State passing the law.

" Mere remedy, it is agreed, may be altered, at the will of the State Legislature, if the alteration is not of a character to impair the obligation of the contract; and it is properly conceded that the alteration, though it be of the remedy, if it materially impairs the right of the party to enforce the contract, is equally within the constitutional inhibition. Difficulty would doubtless attend the effort to draw a line that would be applicable in all cases between legitimate alteration of the remedy, and provisions which, in the form of remedy, impair the right; nor is it necessary to make the attempt in this case, as the courts of all nations agree, and every civilized community will concede, that laws exempting necessary wearing-apparel, the implements of agriculture owned by the tiller of the soil, the tools of the mechanic, and certain articles or utensils of a household character, universally recognized as articles or utensils of necessity, are as much within the competency of a State Legislature as laws regulating the limitation of actions, or laws abolishing imprisonment for debt. *Bronson* v. *Kinzie*, 1 How. 311.

" Expressions are contained in the opinion of the court

which may be construed as forbidding all such 'humane legislation, and it is to exclude the conclusion that any such views have my concurrence that I have found it nec-essary to state the reasons which induced me to reverse the judgment of the State court."

Mr. Justice Hunt also delivered an opinion in the cause, in which he said :

" By the Constitution of North Carolina of 1868, the per-sonal property of any resident of the State, to the value of $500, is exempt from sale under execution ; also, a home-stead, the dwelling and buildings thereon, not exceeding in value $1000.

" The debts in question were incurred before the exemp-tions took effect. The court now holds that the exemp-tions are invalid. In this I concur, not for the reason that any and every exemption made after entering into a contract is invalid, but that the amount here exempted is so large, as seriously to impair the creditor's remedy for the collection of his debt.

" I think that the law was correctly announced by Mr. Chief Justice Taney in *Bronson* v. *Kinzie*, 1 How. 311, when he said: A State 'may, if it thinks proper, direct that the necessary implements of agriculture, or the tools of a me-chanic, or articles of necessity in household furniture, shall, like wearing-apparel, be not liable to execution on judg-ments.'

" The principle was laid down with the like accuracy by Judge Denio, in *Morse* v. *Goold*, 11 N. Y. 281, where he says: ' There is no universal principle of law that every part of the property of the debtor is liable to be seized for the payment of a judgment against him. * * * The question is, whether the law which prevailed when the con-tract was made has been so far changed that there does not remain a substantial and reasonable mode of enforcing it in the ordinary and regular course of justice. Taking

the mass of contracts and the situation and circumstances of debtors as they are ordinarily found to exist, no one could probably say that exempting the team and household furniture of a householder to the amount of $150 from levy or execution would directly affect the efficiency of remedies for the collection of debts' Mr. Justice WOODBURY lays down the same rule in *Planters' Bank* v. *Sharp et al.*, 6 How. 301.

"In my judgment, the exemption provided for by the North Carolina constitution is so large that, in regard to the mass of contracts and the situation and circumstances of debtors as they are ordinarily found to exist, it would seriously affect the efficiency of remedies for the collection of debts, and that it must, therefore, be held to be void."

It is thus seen that a State Legislature may exempt property from execution, such as implements of agriculture, tools of the mechanic, household furniture, etc., without impairing the obligation of contracts previously entered into, within the meaning of the constitution, or increase the amount of exemption after the making of a contract, without working such result.

This goes upon the principle that the Legislature may, in the pursuit of an enlightened public policy, and on principles of humanity, reserve to the debtor, as exempt from execution, the reasonable means of carrying on his business and occupation, and a reasonable amount of the necessaries of life; and that this will not impair the obligation of previous contracts. The creditor knows, when he lends his credit, that the Legislature may make such reasonable exemptions.

Such exemptions are held not to materially impair the obligation of contracts. In the language of Mr. Justice SWAYNE, in the case above cited: "It is to be understood that the encroachment thus denounced must be material. If it be not material, it will be regarded as of no account."

The difficulty in such cases is to determine when the exemption is so great as to materially interfere with the remedy of the creditor, and when not.

In the North Carolina case, it was held that the exemption was so large as to thus interfere.

In the case of *Stephenson* v. *Osborne,* 41 Miss. 119, an act was passed exempting certain property from execution (the kind or value of which is not stated in the report of the case), and providing that, upon the death of the husband, it should descend to the widow. The law was held to be valid in respect to past contracts. The court said, among other things:

" Laws exempting certain descriptions of property from liability to be taken in execution for debt, are founded in a wise and beneficent public policy. The State has an interest that no portion of its citizens shall be reduced to a condition of destitution, so as to be prevented from prosecuting useful industrial employments, for which they are fitted; and that families shall not be deprived, by extravagance or misfortune, of the shelter and comforts necessary to health and activity.

" Nor is such legislation usually regarded, even when retrospective in its character, as obnoxious to constitutional objections. *     *     *     *     *     *     *     *

" The Legislature exercises this power according to its own views of humanity and sound policy. But it is not without its proper limit, and it may be abused. Every party is entitled to an adequate and available remedy for the enforcement of his contracts, and any legislation which impairs the value and benefit of the contract, though professing to act upon the remedy, would impair its obligation.

" It is not competent for the Legislature, under color of an exemption law, so to obstruct the remedy upon contracts as to render it nugatory or impracticable. An abuse

of the legislative discretion in this respect, would demand the interposition of the court. We do not undertake to intimate what would amount to such abuse; such a question would be one of great delicacy and difficulty."

Afterward, in the case of *Lessley* v. *Phipps*, 49 Miss. 790, in the same State, where, at the time of the contract, land not exceeding one hundred and sixty acres, of a value not exceeding fifteen hundred dollars, was exempt from execution, and afterward the Legislature extended the exemption to two hundred and forty acres of land, regardless of its value, which might be worth ten thousand dollars or twenty thousand dollars, it was decided that the latter act was void as to the prior contract.

Having thus ascertained, as nearly as may be, the state of the law on the constitutional question, we proceed to apply it to the case before us.

Previous to the code of 1852, a widow was endowed of the lands of her deceased husband. By that code dower was abolished; and it was provided that one-third of the husband's lands, upon his decease, should descend to his widow, with a certain qualification as to amount, where there were creditors.

It was also provided, that upon the death of the husband, with the qualification above noticed, the surviving wife should be entitled to one-third of all the land of which the husband was seized in fee-simple, at any time during the marriage, in the conveyance of which she may not have joined in due form of law. See statute of descents, 1 R. S. 1876, p. 411, 413, secs. 16, 17, 27.

It may be observed that in *Noel* v. *Ewing*, 9 Ind. 37, these enactments were held valid as applied to a marriage existing at the time the statute took effect, so far as the husband and wife and the heirs and devisees of the husband were concerned. We are not aware that any question has ever been made in this court as to the validity of

the enactment giving the surviving wife one-third of the land, so far as existing creditors of the husband were concerned.

The wife then, as the law stood before the act of 1875, had an inchoate right to one-third of the land of which the husband was seized in fee-simple at any time during the marriage, and this right became consummate upon the death of the husband, unless she had, in the mean time, joined in the conveyance thereof in due form of law. This third, in connection with the other two-thirds, might have been sold on execution against the husband, subject to the contingency of the wife's survivorship. But, by the act of 1875, this third can not be sold at all in that manner; and, when the other two-thirds are thus sold, the hitherto inchoate right of the wife becomes at once consummate.

We are of opinion, in view of the principles and authorities hereinbefore noticed, that the Legislature did not transcend its authority in thus cutting off, to the limited extent mentioned in the statute as to the value of the property, the right to sell the third in which the wife had such inchoate interest. The act is not, in our opinion, open to the objection that it impairs the obligation of contracts.

The provision is but a reasonable one for the protection of the wife and family against absolute want and destitution; and the land thus saved may be as imperatively needed as the farming implements of the farmer, or the tools of the mechanic. The same public policy, and the same principles of humanity, that would protect the one would also protect the other from sale. Then the remedy of the creditor is not, in point of fact, materially impaired. Where lands are sold subject to the contingent interest of the wife, they seldom bring more than the value of the two-thirds, because this is all the purchaser is sure of getting. Before the purchaser receives his deed, which can not be

within a year after the sale, the husband may die and the right of the wife become consummate.

The purchaser seldom enhances his bid in consequence of the chance of obtaining the title to the third in which the wife has an inchoate interest. Hence, the remedy of the creditor is not materially impaired by withholding that third from sale altogether.

And hence, also, much injustice is frequently done, where the purchaser bids what he safely may as the value of two-thirds, but eventually obtains title, by his purchase, to the whole, the wife not surviving.

It follows from what has been said, that the court below erred in holding that the statute was void as to judgments rendered upon prior contracts.

The judgment below is reversed, with costs, and the cause remanded for further proceedings in accordance with this opinion.

Opinion filed at November Term, 1878.
Petition for a rehearing overruled at May Term, 1879.

## DISSENTING OPINION.

BIDDLE, J.—My convictions compel me to dissent from the judgment of my brothers. I agree, however, that full comity and complete amity should exist between the legislative and judicial departments of government; but American courts possess the power—a power not conferred upon any other courts of the world—to declare legislation void whenever it violates the constitution, and, in such cases, it is their high duty to exercise the power; otherwise constitutions would be useless, indeed worse, for they would become mockery. A law that impairs a previous contract violates the constitution; but laws abolishing imprisonment for debt, exempting agricultural implements, mechanic's tools, artisans' instruments, the apparatus of science, the books of the professional man, or a

limited amount of property necessary to sustain and protect a household, have been held valid, as against previous contracts. These laws do not practically impair a contract. They can not be applied unless the debtor is embarrassed, and then they do not take the property of the debtor from the creditor, but leave it with the debtor as a means of payment, and give him liberty that he may use the means. They at most but delay the creditor, and then only in cases when delay is inevitable from the inability of the debtor to pay. Such laws are supported by a strong principle of justice, a broad humanity and an enlightened policy. But the law under consideration takes the property of the debtor away from the creditor, after they had made their contract, and gives it to a third person forever, without any consideration or compensation. Such a law, in my humble opinion, has neither justice, humanity nor policy to support it. When applied to previous contracts, to my sight, it stands out a naked, inexcusable, indefensible wrong. Stay laws have universally been held unconstitutional as to previous contracts; yet these laws do not take away the property from the creditor, nor from the debtor, but simply delay payment of the debt, and then only upon the additional obligation of security to the creditor. How, then, can we hold this law to be constitutional, when it takes the property away from the creditor and the debtor alike? A valid contract, from which, after it has been made, the means of payment are taken away, is impaired; if the means are in part taken away, it is so far impaired; and a law which impairs a contract violates the constitution, and is void.

Nor can I perceive that the authorities cited by my brother Worden, in the opinion of the court, sustain its judgment. The latest, and one most relied upon, is *Edwards* v. *Kearzey*. In that case, the contract protected was not so palpably impaired as in the present case. There

the property was merely exempted from execution, but still belonged to the debtor, and might at some future time be available, or aid by its use, in the payment of the debt; here the property is taken away from the creditor and debtor both forever, and never can be available, or in any manner aid, in the payment of the debt. Mr. Justice SWAYNE, in delivering the opinion of the court in that case, cites and quotes from many authorities, and expresses the opinion of the court, as follows :

. " The obligation of a contract includes every thing within its obligatory scope. Among these elements nothing is more important than the means of enforcement. This is the breath of its vital existence. Without it, the contract, as such, in the view of the law, ceases to be, and falls into the class of those ' imperfect obligations,' as they are termed, which depend for their fulfilment upon the will and conscience of those upon whom they rest. The ideas of right and remedy are inseparable. ' Want of right and want of remedy are the same thing.'    *    *    *

'· " It is also the settled doctrine of this court, that the laws which subsist at the time and place of making a contract enter into and form a part of it, as if they were expressly referred to or incorporated in its terms. This rule embraces alike those which affect its validity, construction, discharge, and enforcement.    *    *    *

: "· One of the tests that a contract has been impaired is that its value has by legislation been diminished. It is not· by the constitution to be impaired at all. This is not a question of degree or manner or cause, but of encroaching in any respect on its obligation,—dispensing with any part of its force.'    *    *    *

'· " These rules are axioms in the jurisprudence of this court. We think they rest upon a solid foundation.    *    *

: " We think the views we have expressed carry out the intent of contracts, and the intent of the Constitution.

The obligation of the former is placed under the safeguard of the latter. No State can invade it; and Congress is incompetent to authorize such invasion. Its position is impregnable, and will be so while the organic law of the nation remains as it is. The trust touching the subject with which this court is charged is one of magnitude and delicacy. We must always be careful to see that there is neither nonfeasance nor misfeasance on our part.

" The importance of the point involved in this controversy induces us to restate succinctly the conclusions at which we have arrived, and which will be· the ground of our judgment.

" The remedy subsisting in a State when and where a contract is made and is to be performed is a part of its obligation, and any subsequent law of the State which so affects that remedy as substantially to impair and lessen the value of the contract is forbidden by the Constitution, and is therefore void."

The Supreme Court of the United States is the ultimate authority in such questions as we are considering, and the case cited above, it seems to me, is in point, and fully sustains this dissenting opinion.

I think the court below was right, and that the judgment ought to be affirmed.