Connelly *et al. v.* Dickson *et al.*

* * *

## No. 7920.

## CONNELLY ET AL. *v.* DICKSON ET AL.

RECEIVER.—*Appointment after Decree.*—A receiver may be appointed after decree, though not prayed for in the original bill.

SAME.—*Real Estate.*—*Rents and Profits during Year for Redemption.*—The court may appoint a receiver of the rents and profits of real estate sold on execution or decree, during the year allowed for redemption, when necessary to secure ample justice to the parties. The sixth clause of sec. 199 of the code, 2 R. S. 1876, p. 144, embodies and re-enacts the equity rule on the subject.

Connelly *et al. v.* Dickson *et al.*

REDEMPTION.—*Statute Construed.*—The last clause of sec. 2 of the act of June 4th, 1861, 2 R. S. 1876, p. 220, should be interpreted as if it read: "The purchaser shall not be entitled to possession of the premises for one year after the sale, but in case they are not redeemed at the end of the year, as provided in this act, the owner or occupant shall be accountable to him for their reasonable rents and profits."

SAME.—*Relation of Parties.—Trustee.—Semble,* that during the year allowed for redemption the occupant is a trustee, both of the land and of the rents and profits, for the use of the purchaser, if a redemption is not effected.

LEGAL AND STATUTORY RIGHTS.—*Equity Jurisdiction.*—Rights defined by contract or created by statute are alike subject to equitable interference, when necessary for the protection of the just rights of all parties.

From the Marion Superior Court.

*R. Hill* and *J. W. Nichol,* for appellants.

*N. B. Taylor, F. Rand, E. Taylor* and *G. Palmer,* for appellees.

WOODS, J.—The appellees, on the 22d day of November, 1876, filed in the court below a verified complaint against the appellants, for the appointment of a receiver of the rents and profits of real estate, averring, in substance, the following facts, to wit: "That, on the — day of August, 1874, the appellant Connelly made his notes to the appellee Josephine M. A. Dickson, the wife of her co-appellee, for the sum of twenty thousand dollars, the same being for the unpaid purchase-money of certain described real estate, which the appellees, on that day, conveyed to said appellant, and, to secure the payment thereof, made a mortgage on said realty, which was duly recorded; that, upon a decree of foreclosure of said mortgage, the sheriff, on the 11th day of November, 1876, duly sold the real estate to the said Josephine for the sum of twenty-one thousand dollars, the full value of the property, and delivered to her a certificate of the sale; that, after crediting the said bid, there remained due and unpaid upon the mortgage debt the sum of two thousand dollars; that there is a dwelling-house on the mortgaged premises, which said Connelly has rented to the

defendant Robert N. Todd at seventy-five dollars per month, payable monthly, and said Todd is occupying the premises as the tenant of said Connelly, and the lease has ten months to run ; that said Connelly can not, and will not, redeem the property from said sale, and, unless the rents are secured and not permitted to go into his hands, the plaintiffs will lose the same for the year for which the right of redemption exists.    Wherefore the plaintiffs ask that a receiver be appointed to collect and receive said rents from said Todd and hold the same until the year for redemption expires," etc.

Todd was served with notice, but as to Connelly, there was a return of not found.    The court appointed a receiver and empowered him to collect the accruing rents from Todd, in accordance with his contract with Connelly and, in case Todd should not be content to occupy the premises, to rent to another suitable tenant, and to hold the sums received, on deposit in a bank named, subject to the order of the court.    Certain proceedings were had between the appellees and said Todd, which, as Todd has assigned no error, need not be detailed.

At the September term, 1877, Connelly appeared and demurred to the complaint, for the alleged want of facts, and saved an exception to the overruling thereof.    Thereafter, on the 23d day of November, 1877, he moved for a discharge of the receiver and for an order upon him to pay the money in his hands to said Connelly, upon the ground that the court had no power to appoint such receiver, and to the overruling of this motion saved his exception.

On November 28th, 1877, the receiver made to the court a report, showing in his hands $786, and asking to be discharged.    The court allowed him $100 for his services as receiver, ordered the remaining $686 paid into court, which was done, and declared the receiver discharged.    No exception was taken to this report, or to the order of discharge.

The appellees thereupon filed a supplemental complaint, alleging that the year for redemption had expired, on November 11th, 1877 ; that said real estate had not been redeemed from said sale, and that, on the 24th of the month, the sheriff had made a deed of the property to the said Josephine, in consummation of the sale, and that she is now entitled to possession ; that the receiver had paid into court the sum of $686, to be disposed of according to the order of the court ; that said Connelly is now a non-resident of the State, and is still wholly insolvent, and that there yet remains unpaid of the mortgage debt the sum of two thousand dollars or more ; wherefore, etc. To this supplemental complaint Connelly demurred, for want of facts stated, saved an exception to the overruling thereof, and elected to stand by his demurrer. Thereupon the court adjudged that said Josephine was entitled to said sum of $686, and ordered the clerk to pay the same, less certain costs, to her attorneys, to which judgment Connelly excepted, and prayed an appeal therefrom.

The assignments of error made in the general term, and which, by a proper assignment here made, we are called on to reconsider, are, in substance, that the court erred, (1) in overruling the motion of the appellant to discharge the receiver, and for the payment of the money in his hands to the appellant ; (2) in overruling the demurrer to the original complaint ; (3) in overruling the demurrer to the supplemental complaint ; (4) in the judgment directing the money paid by the receiver into court to be paid to Mrs. Dickson.

The demurrer to the original complaint presents the first and principal question. The appellant disputes the right of the court to appoint a receiver, except in a pending case, in aid of which a receiver is necessary, and especially insists that the court can not appoint a receiver to take the possession or collect the rents of real estate during the year next after the sale thereof upon execution or upon decree of fore-

closure, because by the act approved June 4th, 1861, "The judgment debtor shall be entitled to the possession of the premises for one year after the sale, and in case they are not redeemed at the end of the year as provided in this act, he shall be liable to the purchaser for their reasonable rents and profits." 2 R. S. 1876, p. 220. On the subject of re-ceivers, the following provisions of the code were in force at the time of the proceedings under consideration, to wit: "Sec. 199. A receiver may be appointed by the court in the following cases : * * * * * * *Third.* In all actions when it is shown that the property, fund or rent and profits in con-troversy is [are] in danger of being lost, removed or materi-ally injured. *Fourth.* In actions by a mortgagee for the fore-closure of a mortgage, and the sale of the mortgaged prop-erty, when it appears that such property is in danger of be-ing lost, removed or materially injured, or, when such prop-erty is insufficient to discharge the mortgage debt, to secure the application of the rents and profits accruing before a sale can be had. *Sixth.* And in such other cases as may be pro-vided by law ; or when, in the discretion of the court, it may be necessary to secure ample justice to the parties."

The last clause may be regarded as a declaration that the court may appoint a receiver in any case in which a court of equity, according to the established rules on the subject, might appoint.

It is perhaps of rare occurrence that courts are called upon to appoint a receiver after final decree in a cause, but that such appointments may be made is well settled ; and this may be done notwithstanding the original bill did not pray a receiver, since the appointment in such case is made because of occurrences subsequent to the decree. High on Receivers, sec. 110, and authorities cited ; Edwards on Receivers, 19 ; Kerr on Receivers, 141. The case of *Dale* v. *Kent*, 58 Ind. 584, is plainly distinguishable, and not at all in conflict with the foregoing authorities.

At the time the provisions of the code quoted above were enacted, the purchaser at a judicial sale, on execution or decree of foreclosure, was entitled to receive a deed at once, and under his deed became entitled to immediate possession; and this doubtless may account for the phraseology used in reference to rents and profits accruing before the sale can be had. From the date of the sale the purchaser became legally entitled to receive the rents and profits, and ordinarily was under no necessity for invoking equitable aid. The act of 1861 does indeed provide in direct and unqualified terms that the judgment debtor shall be entitled to the possession of the premises for one year after the sale, and also repeals generally all laws and parts of laws coming in conflict; but it does not follow necessarily from this that the courts may not, upon any conceivable state of facts, appoint a receiver or impose an injunction in order to protect or enforce the ultimate rights of the parties.

The peculiar circumstances and motives which produced the passage of the act allowing a year's time for redemption from such sales are historical, and too well remembered and understood to need rehearsal. But, aside from any reference to the time and circumstances of the passage of the law, it is sufficiently manifest from the provisions of the act itself, that its main purpose was to permit the owner to remain in possession, after the sale of his land, with a view to enable him to redeem it from the sale, and that to this end he might avail himself of the rents or profits accruing during the time so allowed. Incidental to this chief design was doubtless the benevolent purpose that the debtor, for a year at least, should not be deprived of a home for himself and family. On the other hand, the intention is equally clear that, if the property in any case be not redeemed, the debtor or former owner shall be liable to account to the purchaser for the reasonable rents and profits during the year.

This court has several times had the clause above quoted

Connelly *et al.* *v.* Dickson *et al.*

from the act of 1861 under consideration, but it can hardly be said that a satisfactory construction has yet been reached, nor is it clear that a view can be adopted which will afford a reasonable and just solution of all the cases which have occurred and are likely to yet arise under it.   See *Davis* v. *Newcomb*, 72 Ind. 413, and cases cited.   Construed literally, the provision applies only to the judicial sale of the land of the judgment debtor.   It often happens, however, that the land sold belongs to some person other than the debtor, as, for example, in cases of the foreclosure of a lien on another's land, or the sale upon execution of the land of one who has become liable as replevin bail.   If, therefore, the right of possession during the year for redemption is the creature of this statute solely, and the letter of the enactment is allowed to prevail, the letter is, that "the judgment debtor shall be entitled to the possession."   This declaration of the right is not in terms restricted to sales of the debtor's own lands ; and so, by allowing the lands of another to be sold in satisfaction of a judgment against himself, the debtor becomes, in the letter of the law, entitled to oust the true owner, and himself to take and hold possession during the time allowed for redeeming.   This view, it may be noted, is quite in harmony with the clause concerning rents and profits, for which the letter of the law makes the judgment debtor alone liable.   If this must be strictly enforced, and he alone, in every case of failure to redeem, must be held liable for the rent, then he ought in every case to be entitled to the possession.   Either this must be the result of a literal reading of the law, or else it would seem to be a necessary conclusion that the statute does not, and was not intended to, apply to the sale of lands other than of the judgment debtor.   But it can not well be presumed that the law-maker intended to confer upon the defaulting debtor a right to redeem from a sale of his land, and not allow the same privilege to one who did not owe the debt, but whose lands had

Connelly *et al. v.* Dickson *et al.*

become liable therefor. And, on the other hand, notwithstanding the letter of the law to that effect, it was scarcely intended that the judgment debtor should be liable for the rents of the unredeemed land, unless he had or was entitled to the possession. To the one whose land had been sold to satisfy his debt, the debtor would necessarily be liable for the price for which it was sold; but for a possession which he did not hold, nor enjoy its benefits, he ought not to be held responsible. It is a more reasonable and just, as well as truer, interpretation of the act to say that it was not intended to create a new, but to prolong the existing, right of possession for the period allowed for redemption, and that, in case a redemption was not accomplished, the purchaser should be entitled to recover the rents and profits from the owner or occupant of the land. Instead of the phraseology used, the true meaning of the law may be expressed as follows: "The purchaser shall not be entitled to the possession of the premises for one year after the sale, but in case they are not redeemed at the end of the year, as provided in this act, the owner or occupant shall be accountable to him for their reasonable rents and profits."

The immediate question before us, however, concerns the case of a judgment debtor in possession by a tenant of property, which, before the sale, was his own. In such a case, it can not be justly said that the relation between the debtor in possession and the purchaser at the sale is, under the statute, of a character so purely legal and peremptory as, under any and all conceivable circumstances, to forbid equitable interference. Suppose, for illustration, that the property is a mine of coal, lead or other valuable ore, which might be worked out and exhausted; or a mill, machine shop, or other manufacturing establishment, which, within a year, without proper repairs, might be worn out: must the law be so interpreted that the insolvent debtor, who has avowed his purpose to use the time allowed for redeeming

the property in stripping and despoiling it, may not be restrained or otherwise interfered with? Under such a doctrine, judicial sales of many species of property, for fair prices, would be impossible; and, instead of conferring benefits upon either party, the law would be ruinous to the interests of both debtor and creditor.

There is nothing in the language of the law which warrants the inference of an implied repeal of the power of the courts to interfere in such cases, in accordance with the established rules of equity jurisprudence. The relation between the parties, it may be, is not easily defined. They are not debtor and creditor. The purchaser may be a stranger, who never had a demand; and, if he be the execution plaintiff, he is no longer a creditor; because, in respect to the land sold, the debt is extinguished by the sale. He may or may not become a creditor for the accruing rents and profits, according as there shall or shall not be a redemption from the sale. Neither is the relation between them strictly that of landlord and tenant, though somewhat resembling it. If it were such, it would not be beyond the power of the courts, in a proper case, to appoint a receiver to protect the landlord's interest, either in the property itself or in the rents which he might be entitled to receive.

The debtor, who remains in possession after the sale of his land, certainly owes some duties to the purchaser. He has charge of the property, and without doubt may be restrained from committing actual waste; but mere permissive waste may be no less harmful. Sometimes, too, an injunction does not afford adequate relief against waste; as, for instance, when valuable timber has been cut, or other valuable material has been severed, for the purpose of removal and sale; and, unless, in such cases, a receiver can be appointed, adequate protection and relief can not be administered.

Freeman, in his work on Executions, sec. 349, says: "The purchaser is entitled to such equitable remedies as may be

requisite to secure him his statutory right to the rents and profits. He may therefore, by bill in equity, compel the persons in possession to account with him, or may procure the appointment of a receiver, where the defendant or tenant in possession is insolvent." So it has been held in California, under a statute, in these words: "The purchaser from the time of the sale until a redemption, * * shall be entitled to receive from the tenant in possession the rents of the property sold, or the value of the use and occupation thereof." *Harris* v. *Reynolds*, 13 Cal. 514; *Hill* v. *Taylor*, 22 Cal. 191. In *Harris* v. *Reynolds*, *supra*, it was said: "The defendants being in possession of this property, were trustees for the plaintiff. * * Trustees of this fund," etc. Under our statute, the judgment debtor or owner in possession holds the land itself conditionally for the purchaser that is to say, as trustee for him; and for the reasonable rents and profits, is conditionally accountable or liable to him. Such relations and liabilities are the unquestionable subjects of equitable cognizance.

It is not necessary, however, for our present purpose, to arrive at an exact definition of the relation between the purchaser and the one in possession during the time allowed for redeeming land sold at sheriff's sale. Whether, by force of the law, that relation is equitable or purely legal, is pertinent to the discussion, but it is not controlling of the exact point to be decided, which is, whether at the instance and for the benefit of the purchaser, the court has power during the year next after the sale, for any cause, to appoint a receiver over the property. Before the passage of the act of 1861, and when the purchaser at a sheriff's sale was vested immediately with the absolute title and right of possession, the courts had, and indeed still have, the express power to appoint a receiver when the mortgaged property is insufficient to discharge the mortgage debt, "to secure the application of the rents and profits accruing before a sale can be had."

Now, the mortgagor's right under the law to the possession of his land before the sale is not less absolute or sacred than the right given him by the later law, to continue in possession for a year after the sale, and it is not presumable that the law, by which the latter right was declared, was intended to confer a higher right of possession after the sale than the party, as owner of the title, had before the sale. The right of the purchaser to the rents and profits, if the land be not redeemed, is declared by the same statute, and there is no ground for assuming that there is an implied repeal, as there is certainly no express repeal of the equity powers of the courts to interfere between the parties, for the same reasons and purposes as would justify its interposition between other parties whose relations and rights are defined by law or by contract.

The fact, that the rights and obligations of the parties in such cases are declared by statute, does not make them any stronger or more sacred than if the statute did not exist, and the same rights and obligations arose from a contract in each case between the parties. But it can hardly be doubted that, in the latter case, a debtor permitted to remain in possession with a right to redeem within a year, but bound to surrender possession and pay or account for the rent to the creditor if he did not redeem, would be subject to the power of the court to enjoin him against committing waste, and if necessary on account of his insolvency or other good cause, to appoint a receiver to collect and preserve the rents and profits. In *McCaslin* v. *The State, ex rel.*, 44 Ind. 151, on page 174, it is said: "There seems to be no room to doubt that the cutting down and removing of valuable timber from the land in controversy, and especially where the defendant only claimed the title and possession of such land under a title bond, the purchase-money being unpaid, and it being alleged and proved that the defendant

Connelly *et al.* *v.* Dickson *et al.*

was insolvent, would be such material injury as would justify the court in appointing a receiver to take charge of and preserve such land during the litigation." This and the many similar cases which might be cited show that the strict legal rights of parties, as defined by the contracts into which they have entered, can not be interposed against the exercise of equitable jurisdiction by the courts, when an emergency for its exercise is properly shown.

But if, to prevent waste and to preserve the land, an injunction may issue or a receiver be appointed, in cases where the rights of the parties are defined by contract, it follows that this statutory right of possession is no more absolute and beyond equitable interference; and, if the interference may be to prevent or preserve from waste, it may as well be to collect rents and profits if necessary in order to enforce the rights of the parties in respect thereto. It comes back, finally, to the equity rule, which is reaffirmed in the code, that "A receiver may be appointed by the court, * * when, in the discretion of the court, it may be necessary to secure ample justice to the parties;" and a judgment debtor remaining in possession under the law is not exempt from the rule. We are not, however, to be understood as meaning that a receiver may be empowered to disturb the actual possession of the owner, or of his tenants, occupying under contracts made in good faith. Our decision is, that, where it is shown, as in this case it is shown, that the property is in the hands of a tenant, who is under contract to pay a stipulated rent, which has not been paid to the judgment debtor or the owner of the land, and that the latter is insolvent and can not redeem, the court may appoint a receiver to collect such rents, and to hold the same until the end of the year, if a redemption be not sooner made, to be paid over to the debtor, if he redeems, and otherwise, to the purchaser.

The year for redemption having gone by in this case, the court properly ordered, in accordance with the prayer of the supplemental complaint, that the fund in the hands of the court be paid over to Mrs. Dickson. *Davis* v. *Newcomb*, 72 Ind. 413.

The judgment is affirmed, with costs.