# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF INDIANA,

AT INDIANAPOLIS, NOVEMBER TERM, 1884, IN THE SIXTY-
NINTH YEAR OF THE STATE.

No. 11,223.

### BRYSON v. McCREARY.

SHERIFF'S SALE.—*Redemption of Real Estate.—Landlord and Tenant.—Rents, Right to.—Statute Construed.*—A. and wife executed a mortgage to B. in 1878, upon real estate. The mortgage was foreclosed and the land sold in 1880. The purchaser transferred the sheriff's certificate to C. A short time before the foreclosure, A. had given to his wife, for her own use, the rents of a mill situated upon the mortgaged land. Before the foreclosure also, the wife leased the mill to D. After C. became the owner of the certificate he notified D. to pay the rent to him, which he did thereafter. The land not having been redeemed, C. procured a sheriff's deed in 1882. Action by the wife against D. for the rent during the year allowed for redemption.

*Held*, that the redemption law of 1861, in force when the mortgage was executed, entered as a silent factor into, and became a part of, the contract between A. and B., and that a subsequent law will not be allowed to materially alter or affect their rights under the contract.

*Held*, also, that under the redemption law of 1861, the tenant, D., would not have been liable to C., but to the wife, for the rent; but under the redemption law of 1879, D. was liable to C.

*Held*, also, that the liability of D. was fixed by the law of 1879, and under that law he was liable to C., the owner of the sheriff's certificate, and not to the wife of A. That law made him the tenant of C.

SAME.—*Object of Redemption Law of 1861.*—*Receiver.*—The main object of the redemption law of 1861 was to enable the judgment debtor, by the use of the rents and profits, to redeem his property, and at the same time save the purchaser from loss, and hence the proviso that if the premises were not redeemed, the judgment debtor should be accountable to the purchaser for the reasonable rents and profits; and hence, too, the rulings that in certain cases a receiver would be appointed to collect the rents and hold them for the purchaser in case the premises were not redeemed.

SAME.—*Redemption Law of 1879.*—The main object of the law of 1861 was accomplished by the law of 1879, by requiring the judgment debtor, if he occupied the premises and did not redeem, to account to the purchaser for the reasonable rents, and by allowing the purchaser to collect the reasonable rents in the first instance from other occupants of the premises, and keep them if the premises were not redeemed, and if they were redeemed, to allow a credit on the judgment for the amount collected. This additional authority on the part of the purchaser to collect the rents operated in the way of security.

SAME.—*Statute of 1879 does not Violate Obligation of Contracts.*—*Constitutional Law.*—The redemption law of 1879 did not violate the obligations of the contract between A. and B., but secured its more faithful performance. It may be, therefore, more properly styled a statute affecting and providing a more efficient remedy for the enforcement of the contract between the parties.

SAME.—*No Vested Rights in Laws or Legal Remedies.*—There are no vested rights in the laws generally, nor in legal remedies, and hence changes therein by the Legislature do not fall within the constitutional inhibition, unless they are of such a character as to materially affect the obligation of contracts; and hence, too, laws which merely afford the means for a more efficient enforcement of a contract do not impair its obligation, and are valid.

From the Switzerland Circuit Court.

*W. D. Ward* and *T. Livings*, for appellant.

*J. A. Works* and *J. D. Works*, for appellee.

ZOLLARS, C. J.—The pleadings present this state of facts: George W. Bryson, appellant's husband, being the owner of real estate, and indebted to one Harris, in 1878, appellant joining, mortgaged the real estate to Harris to secure the indebtedness. On the 16th day of March, 1880, the mortgage was foreclosed, and on the 24th day of April, 1880, the real estate was sold for the full amount of the judgment, and was

worth that amount. The purchaser, for value, transferred the sheriff's certificate to one Thomas F. McCreary. A short time before the foreclosure, the husband had given to appellant, for her own separate use and maintenance, the use and rents of a mill situated upon and a. part of the real estate sold under the decree. On the 10th day of March, 1880, which was also before the foreclosure, appellant leased the mill to appellee at a stipulated rent. After Thomas McCreary became the owner of the sheriff's certificate, he notified appellee to pay the rent to him and not to appellant. The real estate not having been redeemed, Thomas F. McCreary received the sheriff's deed in 1882. Up to the time of the notice, appellee paid the agreed rent to appellant. Subsequent to that notice, he paid the rent to Thomas F. McCreary.

Appellant instituted this action to recover from appellee the amount of the agreed rent during the year allowed by law for redemption.

Is she entitled to recover, as against appellee, and against the claims of Thomas F. McCreary? Appellant's contention is that her rights are to be determined under the redemption law of 1861, 2 R. S. 1876, p. 220, because the mortgage was executed while that law was in force, and before the redemption law of 1879, Acts 1879, p. 176, took effect, and that to apply the latter law would bring it in conflict with section 10, of article 1, of the Constitution of the United States, which prohibits the States from passing laws impairing the obligation of contracts, and section 24 of the bill of rights in the Constitution of the State which also prohibits the passage of any law impairing the obligation of contracts. Appellee contends that the rights of the parties must be settled under the law of 1879, and that under that law appellant can not recover. Both acts provided that the owner of real estate sold on execution, and other persons named, might redeem the same within a year after the sale. Upon the subject of possession during the year, and the liability for rents, the act of 1861 provided as follows: "The

judgment debtor shall be entitled to the possession of the premises for one year after the sale, and in case they are not redeemed at the end of the year as provided in this act, he shall be liable to the purchaser for their reasonable rents and profits." The rulings under this statute, and in the interpretation of it, may be classed as follows:

1st. Neither the tenant nor grantee of the judgment debtor, nor any one else except the judgment debtor, could be held liable to the execution purchaser for the rent of the real estate during the year allowed for redemption. *Clements* v. *Robinson*, 54 Ind. 599; *Powell* v. *DeHart*, 55 Ind. 94; *Murphy* v. *Teter*, 56 Ind. 545; *Wilson* v. *Powers*, 66 Ind. 75; *Graves* v. *Kent*, 67 Ind. 38; *Ridgeway* v. *First Nat'l Bank*, 78 Ind. 119.

2d. The rents and profits of the real estate were the property of the judgment debtor, and he might rent the property and collect the rents; they might be levied on and sold as his, or he might assign them or otherwise dispose of them. In either of which cases the execution purchaser could not recover against the tenant, purchaser or assignee of the rents. *Ridgeway* v. *First Nat'l Bank, supra; Favorite* v. *Deardorff*, 84 Ind. 555.

3d. Having collected the rent during the year allowed for redemption, the judgment debtor did not hold them either as the tenant or trustee of the execution purchaser. *Ridgeway* v. *First Nat'l Bank, supra.*

4th. On the other hand, it was held that if a tenant, or the heirs of an insolvent owner of real estate, who was the judgment debtor, were in possession of the real estate, and the property was not sufficient in value to pay the judgment, or was going to waste, and taxes were delinquent, a receiver might be appointed to collect the rents during the year allowed for redemption, and hold them to be paid to the execution purchaser in case the real estate should not be redeemed. *Connelly* v. *Dickson*, 76 Ind. 440; *Brinkman* v. *Ritzinger*, 82

Ind. 358; *Travellers Ins. Co.* v. *Brouse*, 83 Ind. 62; *Buchanan* v. *Berkshire Life Ins. Co.*, 96 Ind. 510.

5th. And so it was held, that if the judgment debtor had made an assignment under the voluntary assignment law, the assignee might be compelled to pay over to the execution purchaser the rents that he might have collected during the year allowed for redemption. *Davis* v. *Newcomb*, 72 Ind. 413.

6th. And so, too, it was ruled, that in case the judgment debtor did not redeem, he was liable to the execution purchaser for the rents and profits, regardless of the statutory liability; that an action would lie at common law, and under 2 R. S. 1876, p. 342, section 14, which provided that "The occupant without special contract, of any lands, shall be liable for the rent, to any person entitled thereto." This was based upon the idea that the title of the purchaser by the sheriff's deed relates back to the time of the sale. *Gale* v. *Parks*, 58 Ind. 117.

It is difficult, if not impossible, to harmonize the reasoning in these several classes of cases. None of them have been expressly overruled. There has been an effort, rather, to distinguish and limit. The reasoning in some of them, however, has been approved, and again condemned.

In the case of *Gale* v. *Parks*, last above, it will be noticed that no reference is made to the earlier cases. This case is not referred to in the case of *Wilson* v. *Powers, supra*, but it is there held, citing the earlier cases, that there is no liability except as fixed by statute, and that under the statute no one except the judgment debtor was liable to the purchaser for the rents.

In the case of *Graves* v. *Kent, supra*, the case of *Gale* v. *Parks, supra*, is referred to, and while there is an effort to distinguish, the ruling is contrary to the doctrine of it. In the case of *Davis* v. *Newcomb, supra*, the case is cited and approved. Again, in the case of *Ridgeway* v. *First Nat'l Bank, supra*, an effort is made to distinguish and limit the case, but the doctrine of the case, that the purchaser may recover on

the doctrine of relation, is strongly combatted and repudiated by a majority of the court. So far as the case holds that the execution purchaser might recover independently of the statute, it should be regarded as overruled by the above cases.

In the case of *Davis* v. *Newcomb, supra,* conceding that under the cases the possession of the judgment debtor could not be disturbed, and that he had the right to dispose of the rents, it was held that the execution purchaser, as against other creditors, was entitled to the rents collected during the year allowed for redemption, by the assignee of the judgment debtor under the voluntary assignment laws. It was said : "And, it being settled that the title related back to the date of the sale, it is a necessary corollary that the money in dispute is and must be regarded as being the proceeds of lands which belonged to the appellants at the time they accrued."

The case of *Connelly* v. *Dickson, supra,* was an application by the execution purchaser for the appointment of a receiver to collect the rents during the year allowed for redemption. The real estate was occupied by a tenant of the judgment debtor. This court held that a receiver had been properly appointed, and that the order to him, after the expiration of the year for redemption, to pay over the rents to the execution purchaser, was a proper order.

Mr. Justice WOODS, in the closing portion of the opinion, said : "We are not, however, to be understood as meaning that a receiver may be empowered to disturb the actual possession of the owner, or of his tenants occupying under contracts made in good faith. Our decision is, that, where it is shown, as in this case it is shown, that the property is in the hands of a tenant, who is under contract to pay a stipulated rent, which has not been paid to the judgment debtor or the owner of the land, and that the latter is insolvent and can not redeem, the court may appoint a receiver to collect such rents, and to hold the same until the end of the year, if a redemption be not sooner made, to be paid over to the debtor, if he redeems, and otherwise, to the purchaser."

After an extended examination of the statute of 1861, in all of its bearings, it was held in the case that "the true meaning of the law, may be expressed as follows: 'The purchaser shall not be entitled to the possession of the premises for one year after the sale, but in case they are not redeemed at the end of the year, as provided in this act, the owner or occupant shall be accountable to him for their reasonable rents and profits.'" To the writer of this opinion, this interpretation of that statute seems to be the proper one, and the reasoning which led to it strong and convincing.

It will be observed that the action was not for a personal judgment against the tenant. For this reason the case has been held to be distinguishable from the other cases where the question of personal liability was involved. But if the interpretation of the statute is the correct one, it would seem to follow that the owner in possession, whether the judgment defendant or not, would be liable for the rents and profits during the year allowed for redemption. Such an interpretation of the statute does not accord with the holding in the other cases above cited. In the later case of *Ridgeway* v. *First Nat'l Bank, supra,* this case is not referred to in the principal opinion, but the other cases, holding that no one but the judgment debtor was liable for rents, were cited and approved. This really amounts to a disapproval of the interpretation of the statute in the Connelly case.

In the opinion upon the petition for a rehearing the case is briefly referred to, with the statement that it is not in conflict with the former cases. In the still later case of *Travellers Ins. Co.* v. *Brouse, supra,* involving the right of the court to appoint a receiver to collect the rents from the tenant of the judgment debtor, the case of *Connelly* v. *Dickson, supra,* is cited and quoted from with approval, including that portion of the opinion giving the interpretation of the statute. This, perhaps, can not be said to be a full approval of the interpretation of the statute, as no question of the personal liability of the tenant was involved. The case is again cited

in the still later case of *Buchanan* v. *Berkshire Life Ins. Co.,* *supra,* in support of the proposition that a receiver may, in a proper case, be appointed to collect the rents from the tenant during the year allowed for redemption. Looking to all the cases upon the subject, the doctrine to be gathered from them, so far as is material here, seems to be that during the year allowed for redemption under the statute of 1861, the judgment debtor was entitled to the possession of the real estate, and the rents and profits therefrom; that he might occupy the same personally or by tenant; that he might sell the rents and profits, in which case his grantee could occupy the premises; that he might sell or assign the rents due from the tenant; that neither the tenant nor the owner of the rents and profits was personally liable to the execution purchaser; that in case the real estate was not redeemed, the judgment debtor was liable to the purchaser for the rents and profits; and that when the premises were occupied by a tenant, and the judgment debtor insolvent, a receiver might be appointed to collect the rents, and, in case the premises were not redeemed, pay them over to the execution purchaser.

So stood the law at the time the mortgage to Harris was executed by appellant and her husband. The statute, as thus interpreted, entered as a silent factor into, and became a part of, the contract between Harris and appellant's husband.

A subsequent law will not be allowed to materially alter or materially and seriously affect those rights, because to allow this would be to sanction a law which impairs the obligation of contracts, and this the Constitution forbids. *Ridgeway* v. *First Nat'l Bank, supra;* *Travellers Ins. Co.* v. *Brouse, supra.* In this latter case it was held that the redemption law of 1881 would not be allowed to take from mortgagee the right to recover the rents from the judgment debtor, he having failed to redeem. See, also, Rorer Jud. Sales, section 609, *et seq.,* and cases there cited; *Strong* v. *Clem,* 12 Ind. 37;

*Scobey* v. *Gibson,* 17 Ind. 572; *Iglehart* v. *Wolfin,* 20 Ind. 32; *McGlothlin* v. *Pollard,* 81 Ind. 228; *Parkham* v. *Vandeventer,* 82 Ind. 544; *Helphenstine* v. *Meredith,* 84 Ind. 1; *Lease* v. *Owen Lodge, etc.,* 83 Ind. 498; Cooley Const. Lim., 284, 290.

In the case of *Lewis* v. *Brackenridge,* 1 Blackf. 220, it was said: " The law, under which the contract was executed, is to be and remain the only rule by which the contract shall be construed.   The obligation shall not be increased, nor the rights diminished, by any act of future legislation." And hence it is that the repeal of a statute, which has thus entered into and become a part of a contract, will not deprive the parties of their rights under the contract.   Such a repeal is as much a violation of the Constitution as the passage of a new and different statute.   *Hawthorne* v. *Calef,* 2 Wall. 10; *Von Hoffman* v. *City of Quincy,* 4 Wall. 535; *State, ex rel.,* v. *Common Council of Madison,* 15 Wis. 30; *Smith* v. *City of Appleton,* 19 Wis. 468.

Upon the same principle it has been frequently held that the appraisement laws in force at the time the contract is made become a part of the contract, and that subsequent laws will not be allowed to materially and seriously alter or affect the rights of the parties. *Doe* v. *Heath,* 7 Blackf. 154; *Sheets* v. *Peabody,* 7 Blackf. 613; *Rawley* v. *Hooker,* 21 Ind. 144. And so it has been held that subsequent laws giving further stay of execution will not be allowed to affect parties who contracted under former laws.   *Dormire* v. *Cogly,* 8 Blackf. 177, and cases there cited; *Strong* v. *Daniel,* 5 Ind. 348.

As to these 'laws, and the claim that they relate to the remedy, in which there are no vested rights, it is said in Cooley's Constitutional. Limitations, pp. 285, 292, upon the authority of the decisions of this and the Supreme Courts of the United States, and the State of Michigan, that such a law, though professing to act only on the remedy, amounts to a denial or obstruction of the rights accruing by the contract, and is directly obnoxious to the prohibition of the Constitu-

tion. And again, " In each of these cases it is evident that substantial rights were affected; and so far as the laws which were held void operated upon the remedy, they either had an effect equivalent to importing some new stipulation into the contract, or they failed to leave the party a substantial remedy such as was assured to him by the law in force when the contract was made." But, in order that a statute may be overthrown because in violation of a contract, it must materially affect the rights of the parties to the contract. It was said in the case of *Edwards* v. *Kearzey,* 96 U. S. 595 : " It is to be understood that the encroachment thus denounced must be material. If it be not material, it will be regarded as of no account." See *Taylor* v. *Stockwell,* 66 Ind. 505; Cooley Const. Lim. 287.

It is well settled everywhere that there are no vested rights in the law generally', nor in legal remedies, and hence changes in these by the Legislature do not fall within the constitutional inhibition, unless they are of such a character as to materially affect the obligation of contracts. And hence laws which afford the means for a more efficient enforcement of a contract do not impair its obligations, and are valid. *Maynes* v. *Moore,* 16 Ind. 116; *Wood* v. *Kennedy,* 19 Ind. 68; *Webb* v. *Moore,* 25 Ind. 4; *Hopkins* v. *Jones,* 22 Ind. 310; *Andrews* v. *Russell,* 7 Blackf. 474; *Pierce* v. *Mills,* 21 Ind. 27; *Taylor* v. *Stockwell, supra.*

Tested by these rules, how stands the redemption law of 1879, with respect to contracts made before its enactment? Under the statute of 1861, the judgment debtor might redeem at any time within a year after the sale, and during that year, occupy the premises and enjoy the rents and profits. If he did not redeem within the year, he became liable to the purchaser for rents and profits.

Under like circumstances, he might redeem and enjoy the same privileges, and was alike liable, under the statute of 1879. So far the statute of 1879 was a re-enactment of the statute of 1861, and so far it may be said that the statute of 1861

was not repealed by the statute of 1879. *Wood* v. *Kennedy,*
*supra.*

Under the act of 1861, the judgment debtor might occupy
the premises by a tenant, and so he might under the act of
1879. Here the differences between the statutes begin. The
proviso to the act of 1879 was as follows: *"Provided,* If such
owner is not the actual occupant of the premises sold, but the
same be occupied by a tenant or other person, such tenant or
other person shall be liable to the purchaser for the reasonable
rent or use, and occupation of the premises, and may be treated,
in all respects, as the tenant of the purchaser, who shall, in
case the property is redeemed, allow, as a payment upon his
judgment, the amount of the rent by him collected."

Under the act of 1861, the tenant was primarily accountable
to the judgment debtor, and not to the purchaser. If the
judgment debtor was insolvent, a receiver might be appointed
to collect the rents from the tenant, and hold them to be paid
to the purchaser in case the premises were not redeemed.

Under the act of 1879, the tenant of the judgment debtor
in possession was treated as the tenant of the purchaser, and
was accountable to him for the reasonable rents in the first
instance, whether the judgment debtor was solvent or in-
solvent.

If the premises were not redeemed, the rents thus collected
belonged to the purchaser. If the premises were redeemed,
the rents so collected were allowed as a payment in favor of
the judgment debtor on the judgment. Under the act of
1861, if a person in good faith bought the rents from the judg-
ment debtor, he could hold them as against the execution
purchaser, and was not liable to him therefor. Under the act
of 1879, if a person bought the rents from the judgment debtor,
he paid him for them at his peril, because the occupant of the
premises was liable to the execution purchaser for the rea-
sonable rents. Did these changes so materially affect the rights
of the mortgagor under his contract, made before the act of
1879 took effect, as to bring that act within the constitutional

limitation? After mature deliberation we have reached the conclusion that they did not. Before the passage of the redemption laws, the execution purchaser was at once entitled to a deed and the possession of the premises.

While the statute of 1861 was, in a sense, benevolent in its object, in allowing the judgment debtor to occupy the premises for a year after the sale, and receive the rents and profits, it was evidently not its object that he should speculate with the possession, rents and profits, to the loss of the execution purchaser. Nor was it the main object of that statute, in the way of benevolence, to provide a home and a living for the judgment debtor during the year allowed for redemption. If that were so, then he should not have been made accountable in case the premises were not redeemed, nor could a receiver have been appointed, in any case, to collect the rents, to be paid to the purchaser upon a failure to redeem. Evidently, the main object of the statute was to enable the judgment debtor, by the use of the rents and profits, to redeem his property, and at the same time save the purchaser from loss, and hence the proviso, that if the premises were not redeemed, the judgment debtor should be accountable to the purchaser for the reasonable rents and profits; and hence, too, the rulings, that in certain cases a receiver would be appointed to collect the rents and hold them for the purchaser in case the premises were not redeemed.

Under the act of 1861, this object was accomplished by allowing the rents and profits to pass in the first instance to the judgment debtor, unless he occupied by a tenant, and was insolvent, and requiring him to account to the purchaser, in case the premises were not redeemed. Under the act of 1879, the same object was accomplished by requiring the judgment debtor, if he occupied the premises and did not redeem, to account to the purchaser for the reasonable rents, and by allowing the purchaser to collect the reasonable rents, in the first instance, from the other occupants of the premises, and keep them if the premises were not redeemed, and if they

were redeemed, to allow a credit on the judgment for the amount collected. This additional authority on the part of the purchaser to collect the rents operated in the way of security.

The judgment debtor, occupying under the act of 1861, did so with the implied agreement on his part, that if he did not redeem he would pay to the purchaser the reasonable rents and profits. This agreement he might violate to the loss of the purchaser, by occupying the premises and refusing to pay. The act of 1879 prevented such bad faith and violation of contract on the part of the judgment debtor by passing the rents, in the first instance, to the purchaser, to be held and applied under the law, as the rights of the parties might be fixed by the redemption, or failure to redeem, by the judgment debtor. And thus the act of 1879 did not violate the contract between the parties, but secured its more sure and faithful performance. The main object of the act of 1861, and the contract under it, was accomplished by the act of 1879, but in a somewhat different mode. The act of 1879 may be, therefore, more properly styled a statute affecting and providing a more efficient remedy for the enforcement of the contract between the parties.

As we have seen, appellant's husband owed the debt, owned the land, and as the contracting party, appellant, his wife, joining, executed the mortgage to Harris. So far as concerns these contracting parties and the parties claiming under them, as Thomas F. McCreary and the parties to this suit, the contract should be enforced under the law of 1879. Had appellant occupied the land during the year allowed for redemption, she would have been liable for the reasonable rents to Thomas F. McCreary, the owner, through the sheriff's sale and deed. In the first place, she was a volunteer, not having paid her husband anything for the rents; and, in the second place, she became the assignee of the rents in 1880, when the law of 1879 was in force. She was bound to know that if she occupied the premises under the assignment, she would be compelled to account to the owner for the rents.

At that time, her husband had no power to assign the rents during the year allowed for redemption, so as to defeat the right of the purchaser to collect the reasonable rent from the occupant. And so, when appellee became the tenant of appellant, he was bound to know that if the property should be sold under the mortgage, and he occupied it during the year allowed for redemption, he would be liable to the purchaser and owner for the reasonable rent. Had he refused to pay, the purchaser could have coerced payment.

One question remains: Appellee having been liable for the rent to the purchaser, and having paid to him, can he also be compelled to pay to appellant? The argument is made, that as he went into possession as appellant's tenant, he can not now dispute her title, and hence must pay to her. A sufficient answer to this is, that the act of 1879 made him the tenant of the purchaser and owner of the property, at least, so far as his accountability for rents was concerned, and to that extent, the act dissolved his relations with appellant.

As the court below ruled in accordance with this opinion, the judgment is affirmed.

Filed May 12, 1885; petition for a rehearing overruled Sept. 15, 1885.