Elliott v. Cale et al.

No. 11,804.

## ELLIOTT v. CALE ET AL.

HUSBAND AND WIFE.—*Judicial Sale.—Act March 11th, 1875.—Wife's Inchoate Interest.—Partition.*—Under the act of March 11th, 1875 (R. S. 1881, sections 2508 to 2511), the inchoate interest of the wife in the real estate of her husband, sold on execution against him, vests and becomes absolute in her on the day of sale, and upon her death shortly after the sale, her husband, to whom such interest descends, may maintain a suit for partition against the purchaser at the sheriff's sale.

SAME.— *Voluntary Assignment by Husband.— Does Not Prevent Vesting of Wife's Inchoate Interest.*—The passing of the legal title to the real estate from the husband by a deed of assignment for the benefit of creditors, does not prevent the inchoate right of the wife from becoming absolute and vested under such act of 1875, by virtue of a subsequent sale of the property upon judgments which became liens thereon when the legal title was in the husband.

SAME.—*In What Real Estate Wife's Interest Vests.—Application of Act of 1875.*—In all judicial sales of real estate in satisfaction of judgment or other liens which attach when the legal title is in the husband and grow out of debts owed by him, in which real estate the wife has an inchoate interest by virtue of her marriage, which interest is not ordered to be sold or barred, such interest, under the act of 1875, becomes absolute and vested in her by virtue of such sales, whether at the time thereof the husband had the legal title or not.

SAME.—*Quantity Taken by Wife.—Construction of Act of 1875.*—Under the act of 1875 the wife, by virtue of a judicial sale of her husband's real estate, takes no vested interest in the excess above $20,000, as to which her rights are left as they were prior to the passage of such act, and depend upon her surviving the husband; but in so much of the real estate as shall not exceed $20,000 in value she takes one-third in fee simple, which, however, is liable to be reduced to one-fourth, in a suit brought against her by the creditors for that purpose, unless the whole of the property sold does not exceed in value $10,000.

SAME.— *Vesting of Inchoate Interest Subject to Prior Lien.—Descent.*—Where the wife's inchoate interest in a lot by virtue of a judicial sale becomes absolute and vested in her subject to the lien of a sewer assessment, which attached prior to the passage of the act of 1875, upon her death such interest descends to the husband subject to such lien, and a sale of the lot thereafter in satisfaction of the assessment vests in the purchaser the title to the whole lot.

From the Marion Superior Court.

113 383
113 423
115 185
117 256

113 383
126 218
127 498

113 383
141 395

113 383
146 50

113 383
148 289
148 291

113 383
f153 457

113 383
158 391

113 383
170 259

*F. Rand, J. M. Winters* and *F. Winter,* for appellant.

*S. Claypool, W. A. Ketcham, J. P. Baker, W. Wallace, L. Wallace* and *A. B. Young,* for appellees.

ZOLLARS, J.—On and before the 7th day of September, 1876, appellant was the owner in fee simple of several parcels of real estate in Marion county, which are described in the findings of facts by the court below and in the pleadings.

On the 5th and 6th days of September, 1876, five different creditors recovered judgments against him in the superior court of Marion county, in the aggregate amount of more than $35,000, which became liens upon his real estate from the dates of their rendition.

On the 7th, 8th, 11th and 12th days of September, 1876, executions were issued upon the several judgments above mentioned, and placed in the hands of the sheriff. The several executions were levied by the sheriff on the 4th day of October, 1876, upon the several parcels of real estate in controversy here, and, also, upon another lot in the city of Indianapolis, all being the property of appellant.

On account of intervening litigation, to be hereafter mentioned, the real estate was not sold until the 8th day of September, 1877. On that day it was all sold upon writs of *venditioni exponas,* and was purchased by appellee Howard Cale, in trust for the several judgment creditors. His bid for the same was paid by receipting the several judgments. He received from the sheriff a proper certificate of purchase.

At the time the judgments were rendered, and at the time the real estate was sold by the sheriff, Martha A. Elliott, appellant's wife, was living. She at no time joined her husband in any conveyance of the real estate; she was not a party to the actions in which the judgments were rendered, nor was her inchoate interest in the real estate, or any part of it, barred, or directed to be sold, in or by any of the judgments. She died on the 20th day of September, 1877, sub-

Elliott v. Cale et al.

sequent to the sale of the real estate by the sheriff on the 8th day of the same month.

On the 14th day of September, 1878, the year for redemption having expired, the sheriff executed a deed to Cale, as such trustee, for all of the real estate sold to him by the sheriff as above stated. Thereupon Cale took possession of the real estate. On the 10th day of October, 1878, appellant, claiming to be the owner of one-third of the real estate sold by the sheriff, demanded of Cale that he should be admitted into possession of the real estate in controversy here as a tenant in common with him. That demand having been refused, he demanded that Cale should account and pay over to him his proportion of the rents and profits of the real estate; and that demand having been refused, he demanded a partition of the real estate.

On the 25th day of October, 1878, appellant instituted this action for partition, making parties thereto the said Cale and the several judgment creditors for whom he was acting as above stated. Averring in his complaint the facts, substantially as we have here stated them, his claim was, that by the sheriff's sale his wife, Martha A., became the absolute owner of the undivided one-third part in value of the real estate in controversy here, being a part of the real estate sold by the sheriff, and entitled to the possession as tenant in common with Cale, and, also, entitled to her proportionate share of the rents and profits. And, further, that, upon the death of his wife, although before the expiration of the year allowed for redemption, and hence before the execution of the sheriff's deed, her one-third descended to him in fee simple, and he became entitled to it, and to the rents and profits thereof.

These claims were based upon the act of 1875, R. S. 1881, sections 2508 to 2511, both inclusive.

A demurrer to the complaint was sustained by the court below. Upon appeal to this court it was held that the com-

plaint stated a cause of action, and that the demurrer thereto should have been overruled.

The question in controversy in this court seems to have been as to whether or not the wife's inchoate interest in the real estate sold by the sheriff became absolute and vested in her, by relation, as of the date of the sheriff's sale. It was decided that it did, and that upon her death it descended to appellant, and that he thereby became entitled to it, and to the rents and profits thereof. *Elliott* v. *Cale,* 80 Ind. 285.. The decision there made, following *Hollenback* v. *Blackmore,* 70 Ind. 234, has become the settled law of the State upon the point decided. *Riley* v. *Davis,* 83 Ind. 1; *Summit* v. *Ellett,* 88 Ind. 227; *Pattison* v. *Smith,* 93 Ind. 447; *Shelton* v. *Shelton,* 94 Ind. 113. And especially is the decision there made the law of this case, so far as the facts were stated in the complaint, and so far as any questions presented by the complaint were decided.

After the commencement of the action, and before the decision in this court reversing the judgment, various conveyances of several parcels of the real estate involved here were made.

Upon the return of the case to the court below appellant filed a supplemental complaint, making parties defendants the several persons who then, or had, claimed to be the owners of the several parcels of real estate by reason of the several conveyances, and again demanded the one-third of the several parcels, and an accounting for rents and profits.

By the supplemental complaint, and the pleadings filed by the several defendants, issues not involved in the former appeal were brought into the case, and with those issues new facts.

In addition to the facts involved in the former appeal, and in addition to the facts above stated, are these, viz.: On the 29th day of August preceding the rendition of the judgments against appellant, he executed a deed of assignment to John C. New, thereby, under the voluntary assignment law, con-

veying to him for the benefit of all of his (appellant's) cred-
itors all of his property, real and personal, including the real
estate in controversy here and other parcels.   On the 7th
day of September, 1876, and subsequent to the rendition of
the judgment, New caused the deed of assignment to be
properly recorded in the office of the county recorder of
Marion county, and accepted the trust as such assignee.

Claiming that the title to the real estate passed from ap-
pellant to him as of the date of the execution of the deed of
assignment, New brought an action against the sheriff and
the judgment creditors to enjoin the sale of the real estate
upon the executions.   On appeal to this court it was decided
that the title to the real estate did not pass to New until the
recording of the deed of assignment, and that, therefore, the
title was in appellant at the time the judgments were rendered;
that they were liens upon the real estate, and that it might
be sold upon the executions to satisfy the judgments.   *New*
v. *Reissner*, 56 Ind. 118.

Nothing was settled by that case as to the title to the real
estate, except that at the time the judgments were rendered it
was still in appellant.

Before the sheriff's sale appellant's title, subject to the
judgments, was, by the assignment, carried to New, the as-
signee, for the purposes of the trust.

Appellee's contention is, that, because the husband's title
had thus passed to the assignee before the sheriff's sale, the
wife's inchoate interest in the real estate did not become ab-
solute and vested in her under the statute of 1875 by virtue
of that sale; that because the title of the husband had thus
passed to the assignee, the wife's rights were the same as they
would have been had the act of 1875 not been passed, and
that she could take nothing in the real estate unless she sur-
vived the husband, in which case she would have taken her
interest therein under other statutes.

The first section of the statute of 1875, to which statute
the parties give different constructions, is as follows:   " In

all cases of judicial sales of real property in which any married woman has an inchoate interest by virtue of her marriage, where the inchoate interest is not directed by the judgment to be sold or barred by virtue of such sale, such interest shall become absolute and vest in the wife in the same manner and to the same extent as such inchoate interest of a married woman now becomes absolute upon the death of the husband, whenever, by virtue of said sale, the legal title of the husband, in and to such real property, shall become absolute and vested in the purchaser thereof, his heirs or assigns, subject to the provisions of this act, and not otherwise. When such inchoate right shall become vested under the provisions of this act, such wife shall have the right to the immediate possession thereof; and may have. partition, upon agreement with the purchaser, his heirs or assigns, or upon demand, without the payment of rent, have the same set off to her." R. S. 1881, section 2508.

In what real estate, under this statute, does the wife's inchoate interest become absolute and vested upon a judicial sale? Is the operation of the statute confined to real estate, the legal title to which is in the husband at the time of the judicial sale, or does it extend beyond that to all real estate in which the wife has an inchoate interest by virtue of her marriage, and which is sold at judicial sale to satisfy judgment and other liens thereon which attached when the husband held the legal title thereto, and which grew out of debts owed by him, although at the time of the sale the legal title is not in him, by reason of an assignment under the voluntary assignment law?

We are satisfied that the passing of the legal title to the real estate from appellant by the assignment did not prevent the inchoate right of the wife from becoming absolute and vested under the act of 1875, by virtue of the sale of the real estate upon the judgments which became liens upon it when the legal title was in appellant.

Whether or not it may, in any case, be material, there is

a difference between a divesting of the legal title by an assignment for the benefit of creditors and a divesting of the legal title by a voluntary conveyance by way of sale. These different methods of divesting the legal title are not the same in form or purpose, nor are they, necessarily, the same in effect.

By a sale and conveyance for value, the title of the grantor is gone beyond the possibility of recall, unless fraud intervened. In case of an assignment, there is a possibility of a portion or all of the assigned property being returned to the assignor. Upon a full settlement by him with all of his creditors before a sale by the assignee, the court having charge of the trust would order the assignee to return the property to him. And should any of the assigned property remain after the payment of all debts and expenses of the trust, that would be returned to him. In one case, the purpose of the conveyance is gain; in the other, the conveyance is for the purpose of bringing about a sale of the property for the benefit of all the assignor's creditors. The deed of assignment is the first step in the accomplishment of that end.

In the case before us, appellant attempted by the assignment to New to bring about an equal distribution of his property among all of his creditors. Had the deed been properly recorded before the judgments were rendered, and the property sold by the assignee, that sale would have been a judicial sale within the meaning of the act of 1875, and by virtue of the provisions of that act would have ripened the wife's inchoate interest in the real estate in controversy into an absolute title in fee simple. Before the title to the real estate had vested in the assignee by the recording of the deed of assignment, the judgments were rendered, and after it had vested in the assignee, subject to the judgment liens, by the recording of the deed of assignment, the real estate was sold upon the judgments. And thus the property, instead of being taken for, and distributed equally

among, all of appellant's creditors, as he intended it should be, was taken by and for the benefit of the judgment creditors. It was, nevertheless, taken by and for creditors, and sold at a judicial sale within the meaning of the act of 1875. Because the few creditors got the property in the race between them and the whole body of the creditors represented by the assignee, is no reason why the wife should lose her rights under the act of 1875.

In order that the wife's inchoate interest in her husband's real estate may become absolute and vested in her under the provisions of that act, it is not necessary that he should hold the legal title to the real estate at the time of the sale.

It has often been declared by this court that the statute should be liberally construed in favor of married women, in . order that it may accomplish the end which the Legislature had in view in its enactment. And so, it has been declared a number of times, that the statute was intended to give to a married woman the same rights in her husband's real estate upon a judicial sale thereof that she would have if she survived him. Those general statements, of course, must be considered with reference to the cases in which they were made, and are not necessarily authority in dissimilar cases; but they tend strongly to show the broad and liberal construction which the court has thought should be given to the statute.

The language of the section of the statute above set out, it will be observed, is broad and comprehensive. The provisions are, that in *all cases* of judicial sales of real property in which any married woman has an inchoate interest by virtue of her marriage, etc., such interest shall become absolute and vested in the wife in the *same manner and to the same extent* as such inchoate interest of a married woman becomes absolute upon the death of the husband. With reference to a case like the one before us, where the real estate is sold upon judgments against the husband, the proper interpretation of the portion of the statute last above no-

Elliott *v.* Cale *et al.*

ticed would seem to be, that it applies to all real estate in which a married woman has an inchoate interest by virtue of her marriage.

Before noticing other features of the statute, it is proper to ascertain by a reference to other statutes in what cases a married woman has such inchoate interest in real estate by virtue of her marriage. So far as is material in this connection, and without noticing the proviso, section 2483, R. S. 1881, provides that if a husband die testate or intestate, leaving a widow, one-third of his real estate shall descend to her in fee simple free from all demands of creditors. That section applies where the husband dies the owner of real estate, and having the legal title thereto. That, upon the judicial sale of real estate thus owned by the husband, at the time of such sale the wife's inchoate interest therein becomes absolute and vested in her to the extent provided in that section, is not questioned by counsel for appellees.

The only other sections of the statutes to which we need here refer are sections 2491 and 2499.

Section 2491, omitting the proviso, is as follows : "A surviving wife is entitled, except as in section 17 (section 2483) excepted, to one-third of all the real estate of which her husband may have been seized in fee simple at any time during the marriage, and in the conveyance of which she may not have joined, in due form of law, and also of all lands in which her husband had an equitable interest at the time of his death," etc.

So far as it is necessary to set it out here, section 2499 is as follows : " No act or conveyance, performed or executed by the husband without the assent of his wife, evidenced by her acknowledgment thereof in the manner required by law; nor any sale, disposition, transfer, or encumbrance of the husband's property, by virtue of any decree, execution, or mortgage to which she shall not be a party (except as provided otherwise in this act), shall prejudice or extinguish the right of the wife to her third of his lands," etc.

It will thus be seen that, upon the death of the husband, the surviving wife, except as otherwise limited, is entitled to one-third of all the real estate of which her husband may have been seized in fee simple during the marriage and in the conveyance of which she may not have joined, and, also, of all real estate in which the husband had an equitable interest at the time of his death, and that she can not be deprived of that right except by some act of her own. In other words, under section 2491, *supra,* the wife, upon the death of her husband, may recover her interest in certain real estate, although at the time of his death the husband may have had but an equitable interest, or may have had no title at all, having conveyed it away. Or, differently stated, under that section, it is not necessary, in order that the surviving wife may recover her interest in real estate, that the husband should have had the legal title at the time of his death.

If the act of 1875, section 2508, *supra,* is applicable to the cases provided for by section 2491, and we think it is, it must follow that in all cases of judicial sales of real estate in which the wife has an inchoate interest by virtue of her marriage, which is not ordered to be sold or barred by virtue of such sales, that interest becomes absolute and vested in her by virtue of such sales, whether at the time thereof the husband had the legal title or not.

We are speaking with reference to cases like the one before us, where the real estate is sold in satisfaction of judgment or other liens, which attached when the husband owned the real estate, and grew out of debts owed by him. See *Hudson* v. *Evans,* 81 Ind. 596.

If the act of 1875 is not applicable to the cases provided for by section 2491, and to cases where the husband may not have the legal title to the real estate at the time of the judicial sale, this court has been in error in a number of cases. That act has been applied in cases where the husband did not hold the legal title to the real estate at the time of the judicial sale, and in a number of cases the decisions have proceeded

upon the assumption that the act is applicable to all the cases provided for in section 2491.

The discussion by the court in the decision of the case of *Hudson* v. *Evans, supra,* was upon the theory that if the wife had not joined her husband in the conveyance of the land, her inchoate rights would have become absolute and vested in her by a sale upon a judgment rendered against the husband before such conveyance by him.

In the case of *Jackman* v. *Nowling,* 69 Ind. 188, the discussion proceeded upon the assumption that the act of 1875 is applicable to the cases provided for by section 2491.

In the discussion by the court in the case of *Taylor* v. *Stockwell,* 66 Ind. 505 (517), the act of 1875 was given a construction covering the cases provided for in section 2491. See, also, *Foltz* v. *Wert,* 103 Ind. 404 (413). The decision in the case of *Ketchum* v. *Schicketanz,* 73 Ind. 137, rests wholly upon section 27, 1 R. S. 1876, p. 413, which is section 2491, *supra,* of the revision of 1881. It was there held that, upon the proper conveyance to an assignee in bankruptcy, which, within the meaning of the act of 1875, was a judicial sale of the husband's real estate, the wife's inchoate interest therein became absolute and vested in her under that act, although the husband had but an equitable title to the real estate. And so, the decision in the case of *Shelton* v. *Shelton,* 94 Ind. 113, rests upon section 2491, and construes the act of 1875 as covering the cases provided for by that section. To the same effect, see, also, *Keck* v. *Noble,* 86 Ind. 1. To substantially the same effect, see *Mattill* v. *Baas,* 89 Ind 220.

When a debtor makes an assignment under the State voluntary assignment law, the title to his real estate passes from him to the assignee upon the recording of the deed of assignment. A sale of the real estate by the assignee is a judicial sale within the meaning of the act of 1875. It has been held that upon such a sale the wife's inchoate interest in the real estate becomes absolute and vested in her under that act, although, as we have said, the legal title passes

from the husband with the recording of the deed of assignment before the sale by the assignee.  *Lawson* v. *DeBolt*, 78 Ind. 563.

Appellees' counsel base their argument upon that portion of the first section of the act of 1875, section 2508, *supra*, which provides that the wife's inchoate interest shall become absolute and vested in her " whenever, by virtue of said sale, the legal title of the husband in and to such real property shall become absolute and vested in the purchaser thereof, his heirs or assigns," etc.   That portion of the section must be considered in connection with what precedes it, and when thus considered should be construed as fixing the time when the wife's inchoate interest becomes absolute and vested in her, rather than as fixing the character of title that the husband must have in the real estate at the time of the judicial sale in order that the wife's inchoate interest may become absolute and vested in her under the provisions of the act.

Appellees' counsel assume that, as the legal title to the real estate had passed from appellant by the assignment to New before the sheriff's sale, the title of the purchaser at that sale comes from New, and not from appellant.   Upon that assumption their argument is, in substance, that no title of the husband did, or could, vest in the purchaser by virtue of the sheriff's sale, and that, therefore, the wife's inchoate interest did not, and could not, become absolute and vested in her by virtue of that sale.   The vice in the argument is in the assumption.   The purchaser at the sheriff's sale derived his title through and from appellant, and not from New.   The judgments were liens upon the real estate before New had title.   The purchaser's title at the sheriff's sale was not only not derived from New, but the title which he acquired overthrew and destroyed New's title.

In a bankruptcy proceeding, the legal title of the property of the bankrupt, both personal and real, passes to the assignee upon a conveyance to him by the court or register.   After that the bankrupt no longer has the legal title.   And yet it has

been held that a purchaser from the assignee derives his title from the bankrupt, and not from the assignee. In other words, such purchaser takes such title as the bankrupt had, and none other.

In the case of *Ketchum* v. *Schicketanz, supra,* it was said that the only title which the purchaser of the real estate from the assignee had came to him from the bankrupt, through the proceedings in bankruptcy, and that he ought not to be heard to say, for the purpose of defeating the wife's claim, that the bankrupt had no title to the real estate when he was adjudged a bankrupt. The same ruling was made in the case of *Mattill* v. *Baas, supra.* See, also, *Roberts* v. *Shroyer,* 68 Ind. 64.

Without further extending this opinion upon this point, we are satisfied that the assignment by appellant before the sheriff's sale did not prevent the wife's inchoate interest from becoming absolute and vested in her by virtue of that sale, under the act of 1875, and that, having died subsequent to the sale, appellant, as her husband, inherited her interest, and upon the execution of the sheriff's deed became entitled to the possession thereof as tenant in common with the purchaser at the sheriff's sale. Being thus the owner and entitled to such possession, he was entitled to his proportionate share of the rents and profits, having been excluded by the other tenants in common. *Carver* v. *Coffman,* 109 Ind. 547; *Riley* v. *Davis, supra.*

Among other conveyances of parcels of the real estate, made subsequent to the commencement of this action, were these of a lot described as lot 7, except 45 feet and 6 inches off of the north end thereof, in square 72, in the city of Indianapolis: On the 7th day of December, 1878, Cale, the purchaser at the sheriff's sale, conveyed all of the real estate to Moody Currier, who took possession thereof. On the 1st day of January, 1879, he sold the above mentioned lot 7 to Joseph P. Wiggins and Mrs. Frances D. Needle, and put them in possession thereof. On the 17th day of September

of the same year, he executed to them a warranty deed to the lot. Wiggins and Mrs. Needle were in possession of the lot until the 6th day of July, 1881, when they, the wife of Wiggins and the husband of Mrs. Needle joining, conveyed it to Isaac H. Richards and Chauncey Butler, who took possession, and were still in the possession of it at the time the supplemental complaint was filed, and at the time of the trial below.

In 1874 the city of Indianapolis, through contractors, constructed a sewer under Missouri street. Lot 7 was assessed for benefits the sum of $233.50. On the 23d day of February, 1875, a precept was issued, in pursuance of an order by the common council, for the collection of the assessment due to the contractors. On the 5th day of the following March, appellant, as the owner of the lot, appealed to the Marion Circuit Court. On the 18th day of July, 1877, final judgment was rendered by that court in favor of the contractors for the full amount of the assessment and costs, and the whole, with interest, was declared and adjudged a lien upon the lot as of the date of the assessment in 1874, and the sheriff was ordered to collect it in the mode provided for such collection by the city treasurer. (R. S. 1881, section 3165.) Appellant appealed to the Supreme Court, where the judgment and decree was affirmed. *Elliott* v. *Bruner*, 66 Ind. 602. On the 8th day of November, 1879, the sheriff sold the lot under a certified copy of the judgment and decree, and in accordance with its terms, to appellee Moody Currier, for $340.14, being the amount of the principal and interest of the assessment and accrued costs so declared a lien upon the lot. There having been no redemption from the sale, the sheriff, on the 14th day of May, 1881, executed to Currier a deed for the lot.

It must be very clear that appellant can take nothing in the lot through his wife by virtue of that sale. Among other reasons why he can not that might be assigned, there

is this sufficient one, that his wife died more than two years before that sale was made.

As we have seen, the sewer assessment was made and became a lien upon the lot in 1874. The sale upon the judgments rendered in the Marion Superior Court was made on the 8th day of September, 1877. On the 18th day of the preceding July, when as yet the wife had no absolute and vested interest in the lot, the circuit court adjudged the sewer assessment to be a valid lien upon the whole lot, and ordered it sold in satisfaction of that lien. At that time the title to the whole lot was in appellant, and hence the judgment as to the extent and validity of the sewer assessment was, and is, conclusive as to him and all in privity with him or claiming under him. It was, therefore, conclusive against his wife as to the title which subsequently vested in her by virtue of the sheriff's sale upon the judgments in the superior court. By virtue of that sale, her inchoate interest in that lot became absolute and vested in her, subject to its proportionate share of the sewer assessment as confirmed by the circuit court. Neither that sale nor the vesting of an absolute title in the wife to a portion of the lot, by virtue thereof, did or could limit or destroy the lien of the sewer assessment.

Without looking for other reasons, it is sufficient here that that lien had attached before the passage of the act of 1875, section 2508, *supra*. See *Buser* v. *Shepard*, 107 Ind. 417; *Jackman* v. *Nowling, supra; Jefferson* v. *Coleman*, 110 Ind. 515.

Upon the death of the wife, her interest, thus subject to the sewer assessment, descended to appellant, her husband. The sale of the lot in the enforcement of that lien carried from him the title to the whole lot and vested it in the purchaser at that sale.

It is contended by counsel for appellant that Currier could not acquire title to the lot as against appellant by a purchase at that sale, for the reason that he was a tenant in common

with appellant. Upon the authority of *Elston* v. *Piggott,* 94 Ind. 14, it may well be said that the relation of the parties was not such as to be in the way of Currier acquiring title through that sale; but a conclusive answer to appellant's contention is, that Currier had sold the lot in January, 1879, and put his purchasers in possession, and by a warranty deed, executed on the 17th day of September of that year, conveyed to them his legal title thereto. He had thus sold and conveyed away his title to the lot, and thereby ceased to be a tenant in common with any one before his purchase of it at the sheriff's sale on the 8th day of December, 1879.

Upon the facts above stated, which are the facts found by the court below, appellant has not now, and did not have when the supplemental complaint was filed and the case tried below, any interest in lot 7. As to that lot, therefore, he is not entitled to partition.

Under all the circumstances of the case, which we need not here detail, we think there was no available error in the granting of leave to some of the defendants below to file additional pleadings.

Having determined that the statute of 1875 is applicable in all cases where the wife has an inchoate interest, there remain the more difficult and complicated questions as to the quantity which she takes by virtue of a judicial sale. What are her ultimate rights as against the judgment creditor, and in what manner shall those ultimate rights be ascertained and fixed?

As we have seen, the first section of the act, section 2508, *supra,* provides that, by virtue of such judicial sale, the wife's inchoate interest shall become absolute and vested in her in the same manner and to the same extent as such inchoate interest becomes absolute and vested upon the death of the husband.

That section, without reference to limitations imposed by subsequent sections, very clearly expresses the legislative in-

tention that upon a judicial sale of real estate, in which the wife has an inchoate interest by virtue of her marriage, that interest shall become absolute and vested in her, both in manner and quantity, just as it would become absolute and vested in her by the death of the husband. That such is the purpose and effect of the statute has been several times declared by general statements in the cases.

When we come to apply the statute as a whole, and give to the wife the same rights in real estate upon a judicial sale that she would take upon the death of the husband, we meet with serious difficulties. This much seems to be certain : that, as her inchoate interest in real estate becomes absolute and vested in her by virtue of the judicial sale, whatever that interest is, as to quantity, it must be measured and fixed as of the day of the sale.

It was said in the case of *Buser* v. *Shepard, supra,* that such inchoate interest " becomes absolute, and vests in the wife in the same manner and to the same extent as if the husband should die on the day of the sale." Therefore, unless the wife takes, and will ultimately hold, a one-third of the real estate in all cases, when she takes anything by virtue of a judicial sale, lot 7 can not be eliminated from the consideration of the question as to what portion of the real estate became absolute and vested in appellant's wife, and descended to him upon her death, and may be ultimately held by him as against the judgment creditor, although that lot was subsequently sold upon a prior lien. As already stated, the real estate in controversy here consists of several different parcels, including lot 7. They were all sold at the same time.

The court below found the aggregate value of the several parcels to be $12,000, of which amount $4,000 was found to be the value of lot 7. Included in the same sale was another lot, described as lot 12, except 15 feet off of the north side thereof, in square 66, in the city of Indianapolis. The value of that lot was found by the court below to be $50,-000. The total value of the real estate sold was thus found

to be $62,000. All of the several parcels were bid in by the trustee of the judgment creditors for the full amount of their judgments, which amounted to near $35,100, besides costs and interest for one year.

If there were any encumbrances on any piece of the real estate except the sewer assessment against lot 7, they are not shown by the special finding of facts. We have, then, a sale of $62,000 worth of real estate for the amount of the judgments, which, with interest and costs, amounted to considerably less than $40,000.

What interest, then, became absolute and vested in the wife by virtue of the sheriff's sale, and how shall that interest be determined? That question was not determined upon the former appeal, and hence the decision then made is not the law of the case as to the question of the quantity of the real estate which became consummate in the wife by virtue of the sheriff's sale.

Section 2 of the act of 1875 (section 2509, R. S. 1881) declares that the provisions of the act shall not apply to any sale of real property of the value, or of the aggregate value, of $20,000 and over, except to so much of such real property as shall not exceed in value the sum of $20,000. It may be presumed that it was because of that section that appellant instituted this action for the partition of the particular parcels of the real estate which aggregate in value $12,000, and omitted from the suit lot 12, which, as we have seen, is of the value of $50,000.

Section 4 of the act of 1875 (section 2511, R. S. 1881) provides that no real property in which any married woman holds such inchoate interest as provided for in the act, liable to be sold with benefit of the appraisement laws of the State, shall be sold on any execution or order of sale issued out of any court for less than four-ninths of the appraised value thereof, exclusive of liens and encumbrances.

Appellant's counsel contend that, by virtue of the sheriff's sale, the wife became the owner in fee simple of the one-

third in value of the parcels in controversy here, although they were of the aggregate value of $12,000. Their contention rests, in part, upon section 2511, *supra*, which, they say, by providing for the sale of the real estate at four-ninths, or, what is the same thing, two-thirds of two-thirds, of the appraised value, clearly indicates that but two-thirds of the real estate is to be sold. Their contention further rests upon the assumption that the wife is thus, in advance of her husband's death, given the one-third of the real estate sold up to $20,000 in value, in all cases, in lieu of her inchoate interest in the whole of the real estate so sold, regardless of its value. We think that the assumption is erroneous, and, therefore, can not be made the basis of an argument.

Independent of the act of 1875, the statutes give to the wife an inchoate interest in all of her husband's real estate, and provide that, in case of his death, one-third of it shall descend to her free from all demands of creditors, with a proviso that where it exceeds in value $10,000 she shall " have" one-fourth only, and where it exceeds $20,000 in value, one-fifth only, as against creditors. Section 2483, *supra*.

If the husband die the owner of a piece of real estate, for example, of the value of $100,000, the wife and widow under those statutes will " have" the one-fifth of it, $20,000, as against all creditors, in any event. Upon the theory of appellant's counsel, if the husband owns a piece of real estate of the value of $100,000, and it is sold at a judicial sale, the wife will take one-third of $20,000, which is $6,666.66, in lieu of her interest in the whole.

We do not think that the Legislature, in enacting the statute of 1875, intended to overthrow the statutes making provisions for the widow. In our judgment, upon a judicial sale of real estate of the value of more than $20,000, the wife's inchoate interest therein becomes absolute and vested in her in so much thereof only as does not exceed

$20,000 in value, and that, in the excess above that amount, her rights are left just as they were before the passage of the act of 1875. If she survives her husband, she will take her interest in the excess above $20,000 just as she would had that act not been passed, and if she does not, as formerly, she will take nothing in such excess.

Appellees' contention, on the other hand, is, that if the real estate sold does not exceed in value $10,000, under the act of 1875, and by virtue of the judicial sale, the wife takes one-third as against the purchaser and judgment creditor; that if it exceeds in value $10,000, she takes one-fourth as against the purchaser and judgment creditor; and that if it exceeds in value $20,000, as to so much as does not exceed in value that sum, the limit fixed by section 2509, *supra*, she takes one-fifth only as against such purchaser and judgment creditor. In other words, their contention is, that the judicial sale, under the act, carries to the purchaser the title to all of the real estate included in the sale, except the one-third, one-fourth or one-fifth, depending upon the value of the whole.

We have reached the conclusion that counsel on both sides are wrong in their constructions of the act of 1875. As we have seen, the purpose of the act as declared in the first section is, that upon a judicial sale the wife's inchoate interest shall become absolute and vested in her in the same manner and to the same extent that it would upon the death of the husband. Observing the limitation imposed by section 2509, it is the duty of the courts to give to the act such a construction as will bring about that result as nearly as may be. What, then, are the rights of the widow in real estate upon the death of the husband? When the husband leaves surviving him children or their descendants, as against such children and all the world the widow, in the first instance, under section 2483, *supra*, takes by descent in fee simple one-third of all the real estate of the husband, regardless of its value, whether the husband died testate or intestate. If

the husband die intestate leaving a wife and one child only,. one-half of his real estate descends to the widow, and one-half to the child.   Section 2486.   If he die intestate leaving no child, but leaving a widow and father and mother, or either of them, three-fourths of his real estate, regardless of its value, descends to the widow, and one-fourth to such father and mother, or the survivor of them, except where the estate does not exceed in value $1,000, in which case the whole goes to the widow.   Section 2489.   If the husband die intestate leaving no child nor father or mother, the whole of his estate, real and personal, regardless of its value, goes to the widow.   Section 2490.   These several in-choate interests of the wife in the real estate become absolute and vested in her upon the death of the husband, and the remaining interests descend to the other persons named.

There are other sections of the statute fixing the interest to be taken by the widow, which need not be noticed here.

Section 2483, *supra*, fixes a limit upon the interest in the real estate which the widow may " have " ultimately as against his creditors.   After providing that the one-third shall de-scend to the widow in fee simple, free from all demands of creditors, there follows a proviso in that section, that where the real estate exceeds in value $10,000, the widow " shall have " one-fourth only ; and that where the real estate ex-ceeds in value $20,000, one-fifth only, as against creditors. In the first instance, then, under the sections named, all of the real estate, or three-fourths, one-half or one-third thereof, descends to the widow, and becomes hers in fee simple, as there may be no children, or father or mother, or one child, or more than one child, as the case may be.   The title to the real estate, which was before in the husband, by his death thus descends to the widow and the other persons named. The real estate thus acquired by the widow she holds in fee simple as against the world, until the portion which may be, shall be taken from her for the payment of the husband's debts.

Before looking to the real estate which thus descends to the widow, the administrator must exhaust the personal estate in the payment of the debts. If that will pay the debts, the widow's interest can not be reduced; and, more than that, it is the duty of the administrator to pay the taxes which accrued before the death of the husband, and to pay off mortgage and judgment liens, although the wife may have joined in the mortgage, and thus enable the widow to hold her interest free from debts and liens. *State, ex rel.,* v. *Mason,* 21 Ind. 171; *Perry* v. *Borton,* 25 Ind. 274; *Hunsucker* v. *Smith,* 49 Ind. 114; *McCord* v. *Wright,* 97 Ind. 34; *Henderson* v. *Whitinger,* 56 Ind. 131.

If the personal estate is insufficient to pay the debts, the administrator must file his petition for an order to sell real estate for the payment of such debts, and make parties thereto, at least, all persons interested in the real estate as owners. Section 2336, *et seq.,* R. S. 1881.

He can not sell real estate on his own motion. There must be an adjudication by the proper court that the sale of real estate is necessary, and as to what real estate shall be sold. If it is found that the sale of real estate is necessary, an order will be made for the sale of that portion which descended to the heirs other than the widow, if that be sufficient to pay the debts and cost of administration, so that the widow may retain the portion which descended to her, whether that portion be one-third, one-half or three-fourths. *Matthews* v. *Pate,* 93 Ind. 443.

If the portion of the real estate other than the widow's is not sufficient to pay such debts and expenses of administration, the question will then be, what is the value of the whole of the real estate owned by the husband? If it exceeds in value $20,000, the order of sale will be so made that the widow shall have one-fifth. If it exceeds in value $10,000, and does not exceed $20,000, the order of sale will be so made that she shall have one-fourth. And if it does not exceed in value $10,000, there can be no order for the sale of

any portion of the widow's third, as in such case she takes and holds the one-third in fee simple, free from all demands of creditors. In such case, the court has no power to order the sale of any portion of the widow's one-third for the payment of debts. *Hanlon* v. *Waterbury*, 31 Ind. 168; *Compton* v. *Pruitt*, 88 Ind. 171; *Frakes* v. *Elliott*, 102 Ind. 47; *Hutchinson* v. *Lemcke*, 107 Ind. 121 (127), and cases there cited.

We have said this much in relation to the settlement of estates for the purpose of showing that the interest which the widow takes by descent upon the death of the husband can not be reduced in favor of creditors in any event, no matter what may be the value of the whole of the real estate, without an adjudication by the proper court, and for the purpose of showing how zealously the law guards the widow's interest in real estate which she takes by descent from her husband.

That portion of the first section of the act of 1875 which provides that upon a judicial sale the wife's inchoate interest shall become absolute and vested in her in the same manner and to the same extent as such inchoate interest becomes absolute upon the death of the husband, of course, must be considered in connection with the other sections of the act. By section 2 of the act, section 2509, *supra*, the real estate in which the wife's inchoate right may become absolute by virtue of a judicial sale is limited to $20,000 in value. She can not, upon such judicial sale, take and hold one-half or three-fourths of the real estate, for the reason that the act clearly contemplates the sale of the two-thirds. Section 4 of the act, section 2511, *supra*, providing that where the real estate is liable to be sold with the benefit of the appraisement laws of the State, it shall not be sold for less than four-ninths of the appraised value, or, what is the same thing, for not less than two-thirds of two-thirds of the appraised value, shows very clearly that not less than two-thirds is to be sold, in any event.

Now, what, under the act, passes to the wife by virtue of a judicial sale? After a somewhat laborious consideration of the act in all of its bearings, we have reached the conclusion, that by virtue of such sale she can not take more than one-third, and that she does take one-third in so much of the real estate sold as shall not exceed in value $20,000, and that she holds that one-third in fee simple just as she would upon the death of her husband, regardless of the value of the whole amount of the real estate sold, until her holding may, in some proper manner, be reduced in favor of creditors.

In the original complaint in this case, it was averred that the real estate in controversy was of less value than $20,000, but of what value it was, was not stated. The form of the averment indicates that it was made because, under section 2509, supra, the wife could not, by virtue of the judicial sale, take any present, absolute and vested interest in any portion of the real estate of a greater value than $20,000. The only question decided upon the former appeal was, that, by relation, the wife's inchoate interest in the real estate became absolute and vested in her as of the day of sale, and that, therefore, upon her death that interest descended to appellant. The question was raised by a demurrer to the complaint. The complaint was sufficient to withstand the demurrer, whether the wife's vested interest was one-third or one-fourth. As we have said, the decision then made is not the law of the case as to the quantity of the real estate taken by the wife, because that question was not decided nor considered. Davis v. Krug, 95 Ind. 1.

There are a number of cases where, as in this, it was averred in the complaint that the real estate was of less value than $20,000; but, as in this case, that averment in each case seems to have been made for the one purpose of avoiding the limitation in section 2509, supra. And, as here, so in those cases, there were no averments showing that the real estate exceeded in value $10,000. There are statements in several of those cases that the wife took one-third of the real estate

by virtue of the judicial sale, but as those statements were made with reference to the cases before the court, and as it does not appear from those cases that the real estate sold in fact exceeded in value $10,000, the decisions can not be regarded as conclusive adjudications upon the question as to whether or not one-third vests in the wife by virtue of a judicial sale, where the real estate exceeds in value $10,000. In other cases, again, it seems to have been taken for granted that the wife took one-third, but the value of the real estate does not appear. See *Youst* v. *Hayes*, 90 Ind. 413; *Pattison* v. *Smith, supra; Richardson* v. *Schultz*, 98 Ind. 429; *Jackman* v. *Nowling supra; Riley* v. *Davis, supra.*

And so it has been said in some of the cases, that, upon the death of the husband, or upon a judicial sale, the one-third, one-fourth or one-fifth of the real estate goes to and becomes the property of the wife or widow as against creditors, as it may be, or exceed, in value $10,000 or $20,000. Those statements, however, related to what the widow or wife may ultimately hold as against creditors, and not to what she takes in the first instance.

In the case of *Taylor* v. *Stockwell, supra,* it was shown that the real estate was of less value than $20,000, but whether it exceeded $10,000 in value was not shown. In that case it was said : " By the act of 1875, the interest which the creditor could have sold on execution, and which the purchaser could acquire under the sale, was cut down to two-thirds of the land. The other third, to which the wife had only an inchoate right, during coverture, to become consummate only on the contingency that she should survive her husband, is given immediately to the wife. * * * By the law of 1875, only two-thirds of the land can be sold," etc.

In the case of *Summit* v. *Ellett, supra,* the wife in her complaint averred that the land was of less value than $20,000. The case of *Taylor* v. *Stockwell, supra,* was approved, and it was said that the " construction of the act of March 11th, 1875, to wit, that sales governed thereby are sales of two-thirds

only, is supported by the 4th section of said act (section 2511, *supra*). * * * Four-ninths being two-thirds of two-thirds, this seems to indicate an intention of the Legislature that in such cases two-thirds only of the land are to be regarded as sold, because if the purchaser should be regarded as buying all the land, he ought to pay at least two-thirds of its appraised value.    If he takes two-thirds only at the sale, then he ought to pay four-ninths of the value of the whole; that is, two-thirds of two-thirds."

In the case of *Mansur* v. *Hinkson*, 94 Ind. 395, the real estate sold was of the value of $2,400; but at the time of the sale the husband and judgment debtor owned other real estate, making the aggregate value of his real estate $19,700. It was contended by the judgment creditor and purchaser at the sheriff's sale, that, the husband being the owner of the other real estate, the wife's consummate interest in that sold should be measured by the value of the whole amount of the real estate owned by the husband at the time of the sale, and thus cut down from one-third to one-fourth.    It was held, amongst other things, that by virtue of a judicial sale under the act of 1875, as in case of the death of the husband, one-third of the real estate sold, regardless of the fact that its value may exceed $10,000, goes to the wife in the first instance.    In other words, that by such sale the title to two-thirds only of the real estate, not exceeding $20,000 in value, passes to the purchaser.

That must be so.   As the act of 1875 contemplates that not less than two-thirds of the real estate shall be sold at the judicial sale, so it equally contemplates that no more than that shall be sold at such sale, as against the wife.   In other words, by virtue of the judicial sale under that act, the inchoate interest of the wife in the real estate sold, limited by that act to $20,000 in value, becomes absolute and vested in her the same as it would upon the death of the husband.   It is not for the judgment creditor, nor for the sheriff or other officer making the sale, to determine *ex parte*, any more

than for an administrator, that it is necessary to sell the three-fourths or four-fifths of the real estate, and, by thus diminishing the wife's title, leave her but the one-fourth or one-fifth, as the value of the real estate may exceed in value $10,000 or $20,000.

Is the wife, then, to permanently retain the one-third, regardless of the value of the real estate sold, and regardless of the question as to whether the judgment lien is greater or less than the value of the two-thirds of the real estate? We have already concluded that one-third is not to be in lieu of all the wife's inchoate interest in the excess over $20,000 in value; that it was not contemplated that by giving her the rights provided by the act of 1875 she should ultimately have a less interest in her husband's real estate, should she survive him, than she would have had that act not been passed.   On the other hand, if she may in all cases, regardless of the value of the real estate and the amount of the judgment lien, permanently retain the one-third, she will, in many cases, retain more than she could in case of her husband's death.   Suppose, for example, that the real estate sold is all the property the husband has, and is of the value of $20,000, and that the creditor's claim is $15,000, equal to three-fourths of the value of the real estate.   In case of the husband's death, the creditor would, by a proper order of the court, be entitled to have three-fourths of the real estate applied in payment of his claim, and the widow would retain one-fourth, or the equivalent of $5,000. If by virtue of the judicial sale she is to permanently retain the one-third, she will get $6,666.66 instead of $5,000, and the judgment creditor will have the two-thirds of the real estate, the equivalent of $13,333.33 only, applied upon his judgment.   Evidently, the Legislature did not intend that the act of 1875 should work out such a result.

How, then, may the one-third which has become absolute and vested in the wife by virtue of the judicial sale be reduced in favor of the judgment creditor?   The result of the

holding and reasoning in the case of *Mansur* v. *Hinkson*, *supra*, is, that the one-third thus held by the wife may be reduced down to one-fourth, according to the value of the real estate, and that, in order to bring about that end, the judgment creditor must take proceedings in court against her. We adhere to the conclusion that the proceeding there indicated will have to be pursued by the judgment creditor, in order to reduce for his benefit the one-third which the wife takes under the statute by virtue of the judicial sale. What shall be the scope and manner of proof in such a proceeding we need not here determine, for the reason that no such proceeding has been instituted for such reduction of the interest which appellant inherited from his wife. As the case comes to us, appellant is entitled to have partition for one-third of the real estate in controversy, except as to lot 7, which, as we have seen, has been sold away from him upon the sewer assessment.

The conclusions of law by the court below upon all of the facts found were against appellant's right to partition of the real estate, and hence nothing was decided by that court upon the question of rents, improvements, etc., as between appellant and appellees, although the facts are found. Upon those questions, therefore, there is no ruling by the court below for review by this court.

We must assume that, in passing upon those questions, the court below will properly adjust the rights of the parties.

The judgment is reversed, at the costs of appellees, except as to Richards and Butler, who are entitled to costs against appellant, and the cause is remanded, with instructions to the court below to change its conclusions of law and make them in favor of appellant in accordance with this opinion, and, having adjusted the rights of the parties as to rents, improvements, etc., to order partition, and otherwise proceed in accordance with this opinion.

Filed Dec. 22, 1887.

ON PETITION FOR A REHEARING.

ZOLLARS, J.—In response to the petition and argument for a rehearing in this cause, we deem it sufficient to say, that all of the difficulties pointed out by counsel as necessary to be met in the practical application of the act of 1875 in the various cases that may arise, were considered upon the hearing. Nothing was written especially upon the questions now suggested, because their formal decision was not necessary to a decision of the case before the court. It was then, and is now, thought best not to write upon those questions until a case shall be presented in which they shall be so directly involved as that their decision shall be necessary and proper to a proper disposition of the case.

Petition for a rehearing overruled.

